Andre Anthony LEWIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 69854.

Court of Criminal Appeals of Texas,
En Banc.

May 15, 1991.

Rehearing Denied Sept. 18, 1991.

R.K. Weaver, Richard Alan Anderson (on appeal only), Dallas, for appellant.

John Vance, Dist. Atty., and Jeffrey B. Keck, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

BENAVIDES, Judge.

Appellant, Andre Anthony Lewis, robbed a convenience store in Carrollton, Texas. During the robbery Matt McKay, the victim came into the store. Appellant instructed Mr. McKay to lie on the floor. Mr. McKay did not respond. Appellant shot and killed him. For this offense he was convicted of capital murder. See Penal Code, § 19.03(a)(2). The jury answered the special punishment issues affirmatively, and the trial judge sentenced him to death. Art. 37.071(b), V.A.C.C.P. His appeal to this Court is automatic. See Art. 37.071(h), V.A.C.C.P.; Tex.R.App.Proc., rule 40(b)(1).

## I.

In his first point of error, appellant claims the trial judge erred in abstractly instructing the jury over his objection regarding the theory of "transferred intent" which appears at V.T.C.A., Penal Code § 6.04(b)(1). He maintains that such theory is not available in a prosecution for Capital Murder because it authorizes conviction without requiring the jury specifically to find an intentional killing. This, he contends, is contrary to the express language of V.T.C.A., Penal Code § 19.03(a)(2).

We need not decide, however, whether § 6.04(b)(1) applies to prosecutions for Capital Murder as the jury in this cause was not authorized to convict appellant under it. The instant cause is one in which the court's application of the law to the facts necessarily limited its abstract instruction on the law of "transferred intent" so as to require a finding of all and only those elements necessary for a conviction before a guilty verdict might be returned. Here, the general statement that persons are culpable for the unintended consequences of their felonious acts, when read together with the application paragraph for Capital Murder, does not purport to authorize a conviction under any circumstances absent a finding that appellant specifically intended to kill the deceased. See Nickerson v. State, 782 S.W.2d 887 (Tex.Cr.App.1990); Garrett v. State, 749 S.W.2d 784, 801 (Tex. Cr.App.1986, 1988) (opinions on original submission & rehearing).

In a closely analogous situation, a panel of this Court held that an abstract instruction on the law of "parties," without specific application to the facts of the case, did not authorize the jury to impose criminal responsibility for the conduct of another. Accordingly, the panel held that overruling an appellant's objection to submission of the abstract instruction was not error. Mauldin v. State, 628 S.W.2d 793, 796 (Tex.Cr.App.1982) (panel opinion). In light of our subsequent opinions in Garrett and Nickerson, the same rationale applies to the imposition of criminal responsibility for the unintended consequences of intentional, felonious conduct.

Appellant's first point of error is overruled.

## II.

In points of error two and three, appellant urges that we declare Art. 37.071(b)(1) and (b)(2) of the Code of Criminal Procedure unconstitutional for failure to define the terms "deliberately" and "probability." He suggests that, without more restrictive definitions, these terms are "vague and overbroad."

This Court has had occasion to address contentions such as these before and, in

each instance, has held that the words in question are not so complex or technical that their common meanings would be incomprehensible to ordinary speakers of the English language. In context of the statutory punishment issues prescribed for cases of Capital Murder, we remain convinced that these terms are not so vague that persons of ordinary understanding must necessarily guess at their meaning. *See Smith v. State*, 683 S.W.2d 393, 410–411 (Tex.Cr.App.1984); *Barefoot v. State*, 596 S.W.2d 875, 888 (Tex.Cr.App.1980); *Granviel v. State*, 552 S.W.2d 107, 117 (Tex.Cr.App.1976); *Collins v. State*, 548 S.W.2d 368, 374 (Tex.Cr.App.1976).

Points of error two and three are overruled.

### III.

Appellant's fourth and fifth points of error allege that the trial judge should have defined the words "deliberately" and "probability" in his charge to the jury. We have consistently rejected such claims for the past 13 years, and decline to reconsider our settled precedents in the instant cause. *Tucker v. State*, 771 S.W.2d 523, 536–537 (Tex.Cr.App.1988) ("deliberately"); *Fearance v. State*, 771 S.W.2d 486, 512–513 (Tex.Cr.App.1988) ("deliberately"); *Rector v. State*, 738 S.W.2d 235, 244 (Tex.Cr.App.1986) ("deliberately"); *Cannon v. State*, 691 S.W.2d 664, 677–678 (Tex.Cr.App.1985) ("deliberately"); *Morin v. State*, 682 S.W.2d 265, 270 (Tex.Cr.App.1983) ("deliberately"); *Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Cr.App.1984) ("probability"); *Russell v. State*, 665 S.W.2d 771, 779–780 (Tex.Cr.App.1983) ("deliberately"); *Barefoot v. State*, 596 S.W.2d 875, 887 (Tex.Cr.App.1980) ("probability"); *King v. State*, 553 S.W.2d 105, 107 (Tex.Cr.App.1977) ("probability" & "deliberately").

Points of error four and five are overruled.

### IV.

■ The trial jury in this cause was selected from a panel drawn in imperfect compliance with a plan adopted by the Dallas County Commissioners Court. Appellant's sixth point of error complains of the imperfections.

Among other things, the Dallas County Jury Selection Plan provides that jury venires be assembled from certified voter registration lists. It appears that the lists used to select the venire from which appellant's jury was chosen were not certified. Other procedural irregularities of this kind were also established by the testimony at trial.

"Noncompliance with the mode and manner of service or summoning the venire constitutes error only when injury has been shown." *Miers v. State*, 157 Tex.Cr.R. 572, 251 S.W.2d 404, 409 (1952). Accordingly, we hold that a successful challenge to a criminal conviction based upon noncompliance with jury selection procedures set out in V.T.C.A., Government Code §§ 62.001 *et seq.*, or in a local government plan adopted pursuant thereto, requires the defendant to establish that such noncompliance compromised the fairness of his trial. Because there is nothing in the record to suggest, nor does appellant contend, that he was prejudiced by the administrative shortcomings here alleged, his sixth point of error is overruled.

### V.

■ Appellant next complains that five black veniremembers in this case were struck by the prosecuting attorney because they were of the same race as he. When a black defendant is convicted by a jury from which black persons have been deliberately excluded on account of their race, then such conviction is unconstitutional. *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); *Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1880). If he can make a *prima facie* case of purposeful discrimination, the State must then offer racially neutral explanations for all peremptory challenges exercised against members of his race. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *See also* Art. 35.261, V.A.C.C.P. When neutral explanations are offered it then becomes the defendant's burden to persuade the court that such challenges

were racially motivated in fact. *Williams v. State*, 804 S.W.2d 95, 97 (Tex.Cr.App. 1991).

■ Here, the prosecutor articulated reasons for his exclusion of each black veniremember in question. These reasons were invariably based upon factors other than race. Accordingly, proof of racially motivated strikes in violation of the Fourteenth Amendment fell ultimately to appellant.

The record discloses that five of eleven peremptory challenges actually exercised by the State were against black veniremembers, but we do not know what proportion of the jury panel was black. Consequently, it is not possible on the record before us to determine whether the State struck black veniremembers at a disproportionately high rate. We do know that one black person actually served as a juror in this cause and that the State did not use all of its peremptory strikes. A black member of the panel was selected before any black venireman was struck.

The State's racially neutral explanations for its peremptory elimination of the five black veniremembers were all plausible; none seem patently contrived or artificial. In many cases, it appears that the prosecutors simply elected to use peremptory challenges on prospective jurors whose views nearly rendered them ineligible for cause and who were in fact challenged for cause, or examined on their views of the trial court. Certainly, the trial court's reliance or ruling based on the explanations made by the prosecutor cannot be viewed as clearly erroneous. *Cf. Whitsey v. State*, 796 S.W.2d 707 (Tex.Cr.App.1990).

Appellant, for his part, made no attempt to cross examine the prosecuting attorneys, nor did he offer any evidence of his own. Rather than attack the reasonable explanations by the prosecutor it perhaps because they could not be attacked, it appears that he regarded the burden of proof as residing entirely with the State, and so was content to argue that the lack of a racial motivation had not been adequately proven. In this belief he was, of course, mistaken. Because the State offered neutral explana-tions, the burden to show racial bias was on appellant. It was his responsibility to persuade the trial judge of an impermissible motive on the part of the prosecutors. *Williams*, 804 S.W.2d at 97.

While appellant's brief does direct our attention to portions of the *voir dire* which may support argument which undermines the prosecutor's explanations, we do not find such evidence or argument so persuasive that a contrary opinion would be unreasonable. Accordingly, there is no legal basis for disturbing the trial judge's decision in this matter. *Tompkins v. State*, 774 S.W.2d 195 (Tex.Crim.App.1987).

Points of error seven through eleven, inclusive, are overruled.

## VI.

Appellant's twelfth point of error complains that the trial judge failed to make findings of fact and conclusions of law concerning the admissibility of his confession, as required by Art. 38.22, § 6, V.A.C.C.P., and he requests that this appeal be abated until such findings and conclusions have been made. *See Wicker v. State*, 740 S.W.2d 779, 783–784 (Tex.Cr. App.1987); *McKittrick v. State*, 535 S.W.2d 873 (Tex.Cr.App.1976). Supplementation of the record since filing of appellant's brief has already supplied the deficiency. Consequently, his twelfth point of error is moot.

## VII.

■ An audio and video recording of the robbery and murder in this cause were made by a camera located in the convenience store. At trial appellant objected to the receipt of expert testimony, based upon a "voice-print" analysis, expressing the opinion that the recorded voice of the killer in this cause was that of appellant. In his thirteenth point of error, appellant contends such testimony was inadmissible because the experimental procedure upon which it was based does not have sufficient general acceptance in the scientific community. *See Frye v. United States*, 293 F. 1013 (D.C.Cir.1923).

We need not reach the merits of appellant's claim, however, because we find beyond reasonable doubt that the error, if any, in admitting the voice print testimony made no contribution to his conviction. Tex.R.App.Proc. 81(b)(2). The voice print analysis was offered to support identity or to show the appellant shot and killed the victim. Even excluding the challenged testimony, the record contains such compelling evidence of appellant's identity as the perpetrator of this crime that his own lawyer conceded the point in his final argument to the jury.

Reduced to its simplest terms, the other evidence of identity consists of a detailed confession from appellant himself, the corroborated testimony of an undisputed accomplice to the crime, and forensic evidence positively connecting appellant with the known murder weapon. From these circumstances we are persuaded beyond reasonable doubt that the verdict would not have been any different absent admission of the contested testimony. *See Pope v. State,* 756 S.W.2d 401, 403–404 (Tex.App.–Dallas 1988).

Appellant's thirteenth point of error is overruled.

### VIII.

An accomplice testified for the prosecution at appellant's trial. Among other circumstances generally affecting his credibility, it came to light that he was also charged at that time with aggravated robbery in Van Zandt County. Although he had not yet managed by the time of appellant's trial to obtain promises of leniency or other benefit from the Van Zandt prosecuting authorities, he nevertheless urgently hoped that his testimony against appellant might eventually move the District Attorney to some such consideration.

■ Appellant sought to cross examine the accomplice concerning details of the Van Zandt robbery but was interrupted by one of the accomplice's attorneys, who advised the latter to decline further interrogation on the subject because his answers might tend to incriminate him. The accomplice acceded to his counsel's advice, in which decision he was supported by the trial judge. Appellant now complains that the accomplice waived his Fifth Amendment privilege by giving testimony concerning the Van Zandt offense on direct examination and that the trial judge contravened appellant's constitutional rights of confrontation by preventing his questioning the accomplice about it.

Appellant was, of course, entitled to pursue all avenues of cross examination reasonably calculated to expose a motive for the accomplice to testify falsely. *Hurd v. State,* 725 S.W.2d 249, 252 (Tex.Cr.App. 1987); *Chvojka v. State,* 582 S.W.2d 828, 831 (Tex.Cr.App.1979). Such avenues necessarily included inquiry concerning criminal charges pending against the accomplice and over which those in need of his testimony might be empowered to exercise control. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Spain v. State,* 585 S.W.2d 705 (Tex.Cr.App.1979) (panel opinion); *Simmons v. State,* 548 S.W.2d 386 (Tex.Cr.App.1977). Plainly, the Van Zandt indictment was one of these, and appellant was thus free to elicit before the jury testimony regarding any promise of benefit the accomplice might have expected to receive in that case from prosecuting authorities on account of his testimony against appellant. Appellant does not explain nor are we able to discern how a close inspection of the alleged offense itself, including the details of its commission, could conceivably have revealed any additional reason for the accomplice to misrepresent appellant's role in the instant cause. Nor is it apparent that the testimony elicited from the accomplice on direct examination was such as to justify an inquiry concerning such details.

To the extent that the pendency of an unrelated robbery charge in another county provided the accomplice with a motive to testify falsely concerning appellant's role in the present case, the jury was made fully aware of it. *See Carmona v. State,* 698 S.W.2d 100 (Tex.Cr.App.1985). Appellant himself has not suggested what further bias might have been exposed by elaborating details of the Van Zandt offense.

*See Janecka v. State,* 739 S.W.2d 813, 830–831 (Tex.Cr.App.1987). Neither has he implied that direct testimony of the accomplice left a false or otherwise damaging impression with the jury regarding issues of significance in the instant cause. He simply claims that the accomplice had no legitimate Fifth Amendment privilege not to testify.

■ Be that as it may, if any rights of confrontation assured appellant by the Sixth Amendment to the United States Constitution or Article I, Section 10 of the Texas Constitution were curtailed, appellant was plainly not harmed as a result. For the reasons already given, we are convinced beyond reasonable doubt that no rational jury would have "received a significantly different impression of [the accomplice's] credibility had [appellant's] counsel been permitted to pursue his proposed line of cross-examination." *Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). And for the same reasons we are equally persuaded that the error, if any, in denying further cross examination on the Van Zandt robbery "made no contribution to the conviction or to the punishment" in this case. Tex.R.App.P. 81(b)(2); *Mallory v. State,* 752 S.W.2d 566, 568–570 (Tex.Cr.App.1988).

Appellant's fourteenth point of error is overruled.

## IX.

■ At the punishment phase of trial, the State offered evidence to prove that appellant had also committed three other unadjudicated felony offenses. Appellant requested that the trial judge limit the jury's consideration of this evidence to the purpose for which it was admitted and caution the jury not to consider the evidence at all unless convinced beyond reasonable doubt that appellant in fact committed the offenses. These requested instructions were refused. On appeal, appellant urges this Court to reconsider its precedents holding that limiting instructions of the kind requested here are not required at the penalty phase of a capital murder case. *Marquez v. State,* 725 S.W.2d 217, 224–226

(Tex.Cr.App.1987); *Santana v. State,* 714 S.W.2d 1, 10–12 (Tex.Cr.App.1986).

One purpose of limiting instructions, both under the current Rules of Criminal Evidence and under prior case law, is to ensure that the jury does not make use of admitted evidence for an impermissible purpose. Tex.R.Crim.Evid. 105(a). Such instructions are necessary when the evidence in question is relevant to a material issue in the case other than the issue for which it was admitted, but the jury is not legally permitted to consider it on such issue despite its relevance. *See, e.g. Crank v. State,* 761 S.W.2d 328, 347 (Tex.Cr.App. 1988) (evidence admitted only to rebut defensive theory); *Livingston v. State,* 739 S.W.2d 311, 332–333 (Tex.Cr.App.1987) (evidence admitted only to show probable cause); *Goodman v. State,* 665 S.W.2d 788, 792 (Tex.Cr.App.1984) (evidence admitted only for impeachment).

On the other hand, limiting instructions of this kind are usually not necessary when evidence is relevant only to the issue for which it was admitted or when the evidence may properly be considered on any issue in the case to which it is relevant. *Richardson v. State,* 786 S.W.2d 335, 337 (Tex.Cr. App.1990); *Cantrell v. State,* 731 S.W.2d 84, 95 (Tex.Cr.App.1987). In such event, there is typically no danger that rational jurors will make use of the evidence for an impermissible purpose.

In the instant cause, the only issues submitted for jury consideration at the penalty phase of trial were the questions prescribed by Art. 37.071(b)(1) and (b)(2) of the Code of Criminal Procedure. In this connection, it does not appear that the evidence of appellant's unadjudicated offenses was offered for a limited purpose by the prosecution. But, in any event, such evidence might properly have been used by the jury in answering any of the statutory questions to which it was relevant. We assume that the jury could, without aid of any further instruction, discern which of the issues, if any, was rendered more or less likely by the evidence. *Quinones v. State,* 592 S.W.2d 933, 947 (Tex.Cr.App. 1980); Tex.R.Crim.Evid. 401. And we per-

ceive no danger that the jury might have used the evidence for some other and impermissible purpose.

■ As for appellant's contention that the jury should have been told not to consider the unadjudicated extraneous offenses unless persuaded beyond reasonable doubt that appellant committed them, we remain convinced that no special instruction to such effect is required by our law. Appellant's rights were adequately protected by the trial court's charge requiring proof beyond reasonable doubt on each of the statutory punishment issues submitted for jury consideration. *Marquez,* 725 S.W.2d at 226; *Santana,* 714 S.W.2d at 11–12.

Appellant's fifteenth point of error is overruled.

### X.

In related points of error, appellant challenges the constitutionality of the Texas capital sentencing procedure upon the ground that it makes no provision for jury consideration of mitigating evidence, and complains that the trial judge failed to instruct the jury in such a way as to correct the deficiency in this case. We overrule both contentions.

■ It is plain from a reading of *Franklin v. Lynaugh,* 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988) and *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) that the statutory method for assessing the death penalty in Texas can be administered in a manner consistent with the Eighth Amendment to the United States Constitution. Whether it is so administered in fact depends upon the circumstances of individual cases. But, in any event, the capital sentencing procedure is not itself unconstitutional for its failure specifically to provide for jury consideration of mitigating evidence.

Whether the Eighth Amendment prohibits imposition of the death penalty when the jury is not empowered to express a "reasoned moral response" to mitigating circumstances of the offense or the offender depends in the first instance upon

whether proof of significant mitigating potential was actually placed in evidence so as to be available for consideration by the jury in making its punishment-related decisions. In the instant case, we find that it was not.

Appellant draws our attention to the testimony of his grandmother, who stated that she sometimes saw appellant with bruises when he was a child, and expressed the opinion that appellant did not have "a happy childhood." We are also asked to consider the testimony of his grandmother and of another witness to the effect that appellant later seemed "remorseful" for his crime. However, after examining this little evidence with some care, we are not persuaded that it had any significant mitigating value.

■ Mitigating circumstances relevant to punishment within the meaning of the Eighth Amendment are those circumstances of "the defendant's background and character [which will support a] belief, long held by this society, that defendants who commit criminal acts that are attributable to [such circumstances] may be less culpable than defendants who have no such excuse." *California v. Brown,* 479 U.S. 538, 545, 107 S.Ct. 837, 841, 93 L.Ed.2d 934 (concurring opinion of O'Connor, J.). But we do not believe the people of Texas hold any such belief as regards persons who, as children, suffered bruises from undisclosed sources, who were once unhappy or frightened of their parents for undisclosed reasons, or who later seemed remorseful for their otherwise inexcusable crimes. The evidence standing alone does not raise any *bona fide* issue regarding mitigation of punishment. Accordingly, the trial judge did not err in failing to instruct the jury in this regard.

Appellant's sixteenth and seventeenth points of error are overruled.

### XI.

■ Finally, appellant maintains that his grandmother should have been permitted to testify at the punishment phase of trial that he openly expressed remorse over

the killing, not merely to opine that he appeared "remorseful." The State's hearsay objection to such testimony was sustained by the trial judge, and we find no error in his ruling.

Under our Rules of Criminal Evidence in effect at the time of trial in this cause, the out-of-court declarations of a defendant or other party, offered for the truth of matters asserted therein, are considered not to be hearsay only when, among other things, they are "offered against [that] party[.]" Tex.R.Crim.Evid. 801(e)(2). Appellant seems not to dispute that the testimony here in question was hearsay, but suggests that we create a new exception to the general rule making such evidence objectionable. This we decline to do.

Although the Eighth Amendment to the United States Constitution assures that no person shall be put to death without opportunity to bring before the sentencing authority all evidence of mitigating circumstances, the Constitution does not assure that the evidence be received in a form which is otherwise objectionable. Remorse following commission of a serious crime may well be a circumstance tending in some measure to mitigate the degree of a criminal's fault, but it must be presented in a form acceptable to the law of evidence before he is entitled to insist that it be received over objection. Appellant's eighteenth point of error is overruled.

As we find no error in the matters raised by appellant, the judgment of conviction and sentence of death in this cause are affirmed.

CLINTON and MALONEY, JJ., concur in the result.

BAIRD, J., not participating.