# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-00-00149-CR

---

**Juan Perez, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
NO. 0990063, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING**

---

A jury found appellant Juan Perez guilty of aggravated sexual assault and aggravated kidnapping. Tex. Penal Code Ann. §§ 22.021(a)(1)(A)(i) & 20.04(a)(4) (West Supp. 2001). The jury assessed punishment at twenty years' confinement in prison and a $10,000 fine for the aggravated sexual assault offense and fifteen years' confinement in prison and a $10,000 fine for the aggravated kidnapping offense. Appellant contends that the evidence is legally and factually insufficient to support the judgment and that the district court erred in overruling his objection to the State's exercise of two peremptory strikes. We will affirm the judgment.

## Background

The complainant testified that she had known appellant for about four or five years and during part of that time they had lived together. About five months before the incident, the complainant told appellant she no longer wanted to be with him and they ceased living together. Afterward, from time to time, appellant would borrow a friend's truck, stop by the Diamond

Shamrock station on Riverside where the complainant worked the 4:00 p.m. to 12 midnight shift, and give her a ride home after work. On several occasions, appellant talked with the complainant about getting back together.

On September 2, 1998, around 12:30 a.m., the complainant testified that appellant stopped at the Diamond Shamrock and told her he would take her home after work. After the complainant closed the store, she got into the truck expecting appellant would drive her home as he said he would and as he had done several times before. This time, however, rather than taking her home, appellant headed in the opposite direction driving south on IH 35. He told her that he wanted to talk with her. When the complainant realized appellant was not taking her home, she became fearful and asked him to stop the truck and drop her off. When he refused, the complainant opened the passenger-side door and considered jumping out of the truck. As she was hanging out of the truck with the door open and her feet dragging the ground, appellant pulled her back into the truck by grabbing her hair and her Diamond Shamrock work jacket. As he grabbed her, he told her to shut her mouth. He told her he felt like beating her, threatened to cut off her hair with a knife and kill her. Finally, he told her that he would wreck the truck and kill both of them.

Appellant drove to a secluded wooded area where he stopped the truck. He had the complainant walk into the woods where he put down a blanket and a pillow that the complainant had given him several days earlier and sexually assaulted the complainant. He cleaned himself and the complainant with the complainant's Diamond Shamrock work jacket. He had the complainant get back in the truck and drove her home. He left his underwear, the pillow and blanket in the woods.

When they reached the complainant's apartment, he asked if he could spend the night and again asked her to consider getting back together with him. The complainant told appellant he could not spend the night and to leave her house. After appellant left, the complainant took a shower and rolled up the semen-stained work jacket and put it on a shelf near her washing machine. The complainant did not immediately contact police about the incident because she was afraid of appellant. She was also concerned about her two older sons' reactions upon hearing about the incident. After the alleged sexual assault, the complainant reported two other incidents to police involving appellant before she reported the sexual assault.

One week after the incident, the complainant reported the sexual assault to police. Austin Police Officer Jason Bryant investigated the incident and testified that the complainant led him directly to the scene of the alleged offense where he recovered the blanket, pillow and underwear.

Karen Scalise, a DNA specialist and hair expert with the Department of Public Safety, testified that there were no semen or blood stains on the blanket, pillow or the underwear. She testified that two hairs found on the underwear did not match appellant's hair. The DNA found in some body tissue attached to the hair, however, was consistent with appellant's genetic profile. Although she agreed that the results from the DNA and microscopic hair tests were odd, she would not speculate or venture an explanation for the results other than to say that appellant's body tissue could have attached to another person's hair shaft.

The complainant testified that she did not know what happened to the Diamond Shamrock jacket she wore the night of the incident. The complainant explained that she did not turn it over to police because she was not thinking about evidence when she reported the incident.

3

The complainant's daughter, who was fifteen at the time of the incident, testified that when she and her family moved, she threw away the torn, stained, Diamond Shamrock work jacket her mother had worn the night of the incident. Additionally, the complainant testified that she did not know what happened to the shoes she wore the night of the incident.

## Discussion

### *Legal and Factual Sufficiency*

In appellant's first two issues, he contends that the evidence is legally and factually insufficient to support the jury's verdict. Appellant argues that there are many reasonable explanations for the presence of his blanket and underwear at the scene of the alleged assault. Appellant argues that the complainant was angry with him before the alleged assault and she had waited several days after the assault before contacting the police. Finally, appellant contends that the complainant's testimony about the portion of the truck ride during which she claimed her feet were dragging the pavement as the truck was traveling on IH 35 was completely incredible.

The standard for reviewing the legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Skillern v. State*, 890 S.W.2d 849, 879 (Tex. App.—Austin 1994, pet. ref'd). The standard of review is the same in both direct and circumstantial evidence cases. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995); *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992). The State may prove its case by circumstantial evidence if it proves all of the elements of the charged offense beyond a reasonable doubt. *Easley v. State*, 986

S.W.2d 264, 271 (Tex. App.–San Antonio 1998, no pet.) (citing *Jackson*, 443 U.S. at 319). The sufficiency of the evidence is determined from the cumulative effect of all the evidence; each fact in isolation need not establish the guilt of the accused. *Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987). It is important to remember that all the evidence the jury was permitted, properly or improperly, to consider must be taken into account in determining the legal sufficiency of the evidence. *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); *Rodriguez v. State*, 939 S.W.2d 211, 218 (Tex. App.–Austin 1997, no pet.).

The jury is the exclusive judge of the facts proved, the weight to be given the testimony, and the credibility of the witnesses. Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1993); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). The jury is free to accept or reject any or all of the evidence presented by either party. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). The jury maintains the power to draw reasonable inferences from basic facts to ultimate facts. *Welch v. State*, 993 S.W.2d 690, 693 (Tex. App.–San Antonio 1999, no pet.); *Hernandez v. State*, 939 S.W.2d 692, 693 (Tex. App.–Fort Worth 1997, pet. ref'd). The reconciliation of evidentiary conflicts is solely within the province of the jury. *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995).

Under the *Jackson* standard, the reviewing court is not to position itself as a thirteenth juror in assessing the evidence. Rather, it is to position itself as a final due process safeguard insuring only the rationality of the fact finder. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). It is not the reviewing court's duty to disregard, realign, or weigh the

evidence. *See id.* The jury's verdict must stand unless it is found to be irrational or unsupported by more than a "mere modicum" of evidence, with such evidence being viewed under the *Jackson* light. *See id.* The legal sufficiency of the evidence is a question of law. *McCoy v. State*, 932 S.W.2d 720, 724 (Tex. App.—Fort Worth 1996, pet. ref'd) (citing *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991)).

A review of the factual sufficiency of the evidence begins with the presumption that the evidence supporting the conviction was *legally* sufficient. *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). The reviewing court asks whether, in conducting a neutral review of all the evidence both for and against the finding, the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by the contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). In a factual sufficiency analysis, it must be remembered that the trier of fact is the sole judge of the weight and credibility of the testimony. *Santellan*, 939 S.W.2d at 164. Appellate courts should be on guard not to substitute their own judgment in these matters for that of the trier of fact. *Id.* One principle of a factual sufficiency analysis is deference to the findings of the jury or other fact finder. *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Appellate courts should exercise their jurisdiction to review the factual sufficiency of the evidence only to prevent manifestly unjust results; they are not free to reweigh the evidence and set aside a jury verdict merely because the judges believe a different result is more reasonable. *Reaves v. State*, 970 S.W.2d 111, 115 (Tex. App.—Dallas 1998, no pet.) (citing *Cain*, 958 S.W.2d at 407; *Clewis*, 922 S.W.2d at 135).

Appellant did not testify at trial. The only explanation suggested for appellant's underwear, blanket and pillow being at the scene of the alleged assault was that appellant and the complainant had been paramours who had previously lived together and appellant left some of his clothes at the complainant's house after he moved out. The jury was not bound to accept that explanation. Additionally, whether the complainant was dragged down IH 35 in precisely the fashion she described was not the central issue in the case. Considering the emotional state the complainant was in at the time appellant was driving her to the secluded wooded area, her description of the dragging does not render *all* of her testimony about her abduction and sexual assault irrational or unsupported by more than a modicum of evidence. In viewing the evidence in a light most favorable to the jury's verdict, a rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offenses charged. Additionally, the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We hold that the evidence is legally and factually sufficient to support the jury's verdict. Issues one and two are overruled.

### Batson Objection

In his third issue, appellant contends that the district court erred in overruling his objection to the State's exercise of two peremptory strikes.

It is well established that a peremptory strike used in a racially discriminatory fashion is prohibited by the Fourteenth Amendment. *Batson v. Kentucky*, 476 U.S. 79 (1986); Tex. Code Crim. Proc. Ann. art. 35.261 (West 1989). When challenging a peremptory strike as racially motivated, the defendant must initially establish a *prima facie* case of purposeful

discrimination. *Harris v. State*, 827 S.W.2d 949, 955 (Tex. Crim. App. 1992). If the defendant makes this showing, the State must then rebut the presumption of discrimination with race-neutral explanations for challenging the potential jurors in question. *Id.* Once the State provides race-neutral explanations, then it is incumbent upon the defendant to show by a preponderance of the evidence that the State was racially motivated in using its peremptory strikes by impeaching or refuting the State's neutral explanations or by showing that they were merely a pretext for discrimination. *Tompkins v. State*, 774 S.W.2d 195, 202 (Tex. Crim. App. 1987).

In reviewing a district court's ruling on a *Batson* objection, an appellate court applies the "clearly erroneous" standard of review. *Tennard v. State*, 802 S.W.2d 678, 680 (Tex. Crim. App. 1990). The appellate court reviews the entire record, including *voir dire* and the *Batson* hearing and considers the evidence in the light most favorable to the district court's ruling. *Cantu v. State*, 842 S.W.2d 667, 689 (Tex. Crim. App. 1992); *Whitsey v. State*, 796 S.W.2d 707, 716 (Tex. Crim. App. 1989). A reversal is mandated only if a review of the *voir dire* record, the State's explanations, and the defendant's rebuttal and impeachment evidence result in a definite and firm conviction that the challenged peremptory strikes were used in a purposefully discriminatory manner. *Williams v. State,* 804 S.W.2d 95, 101-02 (Tex. Crim. App. 1991).

Before the jury was sworn, appellant objected to the State's exercise of its peremptory strikes against two Hispanic individuals. Tex. Code Crim. Proc. Ann. art. 35.261(a) (West 1989). The district court ruled that appellant established a *prima facie* case of racial discrimination. Called upon by the court for race-neutral reasons, if any, for the two strikes, the State presented as evidence statewide computerized criminal history reports that showed potential juror six had been convicted of marihuana possession and potential juror thirty-one had been

8

charged with theft by check although the records indicated that the theft charge was dismissed. Regarding juror thirty-one, the State also gave a race-neutral reason to strike her because she appeared to vacillate before responding that she would convict on the testimony of a single witness when her body language indicated that she was in a quandary. Additionally, the State argued that there were other individuals within the strike zone that had Hispanic surnames that the State did not strike because there was no indication any of them had been in trouble with the law. After the State presented race-neutral reasons for striking potential jurors six and thirty-one, it was incumbent upon appellant to rebut the State's explanations to the extent "that it can be rationally inferred that the State engaged in purposeful racial discrimination." *Id.* Appellant attempted to rebut the State's explanation by arguing that although the two challenged individuals had the same names and one had the same birthday as the two people reflected in the criminal records, the State failed to prove conclusively that potential jurors six and thirty-one were the same individuals as those reflected in the criminal records. The district court reviewed the criminal history records and ruled that "there [were] valid race[-]neutral reasons exigent for the State's peremptory strikes" and overruled appellant's *Batson* objection.

Appellant contends that the district court erred in overruling his *Batson* objection because the State's explanations were not legitimate explanations for the two challenged strikes since the State failed to link the challenged individuals with the names generated by computerized criminal history checks.

Striking a potential juror due to a belief that the individual has had trouble with the law has been found to be a race-neutral explanation for exclusion from a jury. *Anderson v. State*, 758 S.W.2d 676, 680 (Tex. App.—Fort Worth 1988, pet. ref'd). Additionally, body language and

9

demeanor are race-neutral explanations that have been upheld. *Chambers v. State*, 724 S.W.2d 440, 442 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd). Here, the State's explanations were race-neutral.

Next, we determine whether appellant presented evidence to rebut the State's explanations or show that they were merely a sham or pretext for discrimination. *Williams*, 804 S.W.2d at 101; *Hermosillo v. State*, 903 S.W.2d 60, 66 (Tex. App.—Fort Worth 1995, pet. ref'd) (citing *Lewis v. State*, 815 S.W.2d 560, 563-64 (Tex. Crim. App. 1991)). If a defendant fails to present evidence rebutting the explanations, a determination that the State's strikes were not racially motivated is not clearly erroneous. *Williams*, 804 S.W.2d at 101.

At the *Batson* hearing, appellant did not present evidence and only argued that the State failed to prove the challenged potential jurors were the same individuals shown on the criminal history records. Appellant suggested at the hearing that it was the State's responsibility to ask questions of the challenged potential jurors that would establish that they were in fact the individuals referred to in the criminal history records. We disagree.

First, we note that the State gave multiple race-neutral explanations for striking potential juror thirty-one. The only race-neutral explanation appellant attempted to rebut during the *Batson* hearing was past criminal history. Appellant did not address the other bases for striking potential juror thirty-one and therefore did not rebut by a preponderance of the evidence the State's race-neutral explanation for striking that individual. Regarding juror six, the record reflects that the State did not ask him about his criminal history. It was, however, appellant's burden to rebut the State's facially race-neutral explanations. *Whitsey*, 796 S.W.2d at 713. Appellant did not present any evidence or ask potential juror six any questions to establish that in

10

fact he was *not* the individual shown on the criminal history report. We conclude appellant did not meet his burden to show by a preponderance of the evidence that his allegations of purposeful discrimination in fact were true. We hold that the district court's overruling of appellant's *Batson* objection was not clearly erroneous. Appellant's third issue is overruled.

The judgment is affirmed.

_____

Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Jones[*]

Affirmed

Filed:   February 15, 2001

Do Not Publish

Before J. Woodfin Jones, Justice (former), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).