COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-05-120-CR

 

 

CHARLES JEFFERSON GRIGGS                                              APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE 211TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








Between 1:45 a.m. and 2:37
a.m. on April 18, 2003, a 1998 Honda, traveling at around 100 miles per hour,
left the roadway, crashed into a grassy knoll, and slammed into at least one
telephone pole before landing in a fenced pasture.  Apparently, no one witnessed the
accident.  Appellant Charles Jefferson
Griggs, one of the car=s three
occupants, reported the accident to the police at 2:47 a.m.  It took the police ten to fifteen minutes to
locate the wreck because Appellant placed the 911 call from a cell phone at the
isolated scene. In addition to Appellant, the car had carried two other young
men, Lance Jenkins and Brian Williams. 
None of the occupants wore a seatbelt, all were ejected during the
crash, and Jenkins and Williams died at the scene.  Appellant did not suffer serious
injuries.  Appellant was charged with two
counts of intoxication manslaughter.  A
jury convicted him on both counts and also entered an affirmative deadly weapon
finding for each count.  The trial court
sentenced Appellant to forty years= confinement in the Institutional Division of the Texas Department of
Criminal Justice on each count, with the sentences to run concurrently.

In five points, Appellant
complains of the legal and factual sufficiency of the evidence to support his
conviction and contends that his trial counsel provided ineffective assistance
of counsel.  Because we hold that the
evidence is legally and factually sufficient and that Appellant has not met his
burden of proving ineffective assistance, we affirm the trial court=s judgment.

Sufficiency of the Evidence








In his second, third, fourth,
and fifth points, Appellant contends that the evidence is legally and factually
insufficient to support his convictions for intoxication manslaughter in the
deaths of Williams and Jenkins. 
Specifically, he argues that the evidence is insufficient to show that
he drove the car because the expert testimony was wrong and incompetent and
that the evidence is insufficient to prove intoxication because the only
evidence of intoxication is his breath alcohol concentration (BAC) of .085, but
he was charged solely on the Aloss of faculties@ prong.








In performing a sufficiency
review, we must consider all the evidence, even if it was improperly admitted.[2]  The jury is the sole judge of the weight and
credibility of the evidence.[3]  At trial, the parties stipulated that Brian Williams,
the owner of the car, was the front seat passenger.  Appellant=s theory was that Lance Jenkins was driving the car.  The evidence showed the following.  Appellant used Brian Williams=s cell phone to call 911 at 2:47 a.m. and asked, AWhat did I hit?@  During the investigation, the police learned
that at 2:30 a.m., Lance=s girlfriend
had called Brian=s cell
phone.  An outgoing call to Appellant=s mother-in-law and three outgoing 911 calls from the cell phone
occurred shortly thereafter.  The
evidence at trial showed that Appellant had called his mother-in-law at 2:37
a.m. and had a conversation with her ten minutes before his 2:47 a.m.
conversation with the dispatcher and that he had also placed two 911 hang-ups
before actually reporting the accident to the police.  When the first responding officer, Chris
Plank of the Denton Police Department, arrived at the scene, he noticed that
Appellant was lying on the ground, talking on a cell phone.  Emergency personnel transported Appellant to
the hospital, and he was released later that same day.

Witnesses for both parties
testified that the car must have been traveling at around 100 miles per hour at
the time it left the roadway, that it hit a grassy knoll and a telephone pole,
and that it was airborne at some point. 
Officer Lisa Martin of the Denton Police Department testified that it
appeared that the eastbound car had gone straight instead of curving with the
road.  The car ended up in a field across
a ditch, a fence, and a stand of trees, landing with the left wheels bent under
it and the roof sticking straight up, detached on three sides.  The hood, the inside rearview mirror, and
other car parts had come off.  Some car
parts were hanging in the trees.  A
telephone pole used as a corner fence post, which had been encased in concrete
about four feet deep before the wreck, had been pulled out of the ground, along
with chunks of concrete.








Because the car was
registered to Brian Williams, the police initially assumed that he must have
been driving.  Later in the evening on
the same day as the accident, when Martin went to Appellant=s home to question him about the accident, he told her that he and
Brian had been best friends and that Lance was a new friend and a new roommate
of Brian=s.  At that time, Appellant said
that he had little recollection of the crash. 
He said that he remembered going to a bar in Denton during the evening
before the crash occurred.  He also said
that he did not know if he had been the driver at the time of the accident but
that he had either been the driver or the front seat passenger.  Appellant asked Martin what would happen if
he had been the driver.








In a later conversation on
April 23, 2003, Appellant told Martin that he had been driving the car earlier
in the evening, that only he or Brian would have been driving the car at the
time of the accident, and that when Brian drove, he put the seat back as far as
it would go because of his disability. 
(Brian was partially paralyzed on his right side and wore a leg
brace.)  Brian=s brother, Christopher Beamon, testified that Brian would lean the
back of the seat very far back when he drove. 
Brian=s mother
testified that Brian put the seat and the back of the seat back a lot when he
drove.  There was no evidence that anyone
moved the seat of the vehicle after the wreck. 
When Martin examined the seats based on Appellant=s information, she found that the passenger seat was all the way back,
but the driver=s seat was
not.  Appellant also told Martin that the
men would not have stopped to change drivers because they were supposed to pick
up Lance=s girlfriend in Dallas at 2:00 a.m. and were already running late.

On a still later occasion,
Appellant called Martin and said that he had remembered that he was the front
seat passenger and that Brian was driving at the time of the accident.  He said that he had been drinking that night
and had no memory of events after 10:30 or 11:00 p.m.  He also said that he blacked out prior to the
crash, and they agreed in the conversation that that term meant that he was
still talking and functioning but with no recollection. Appellant insisted that
there was no way that Lance would have driven because he was a new friend in
Brian=s life, and Brian would not have allowed him to drive the car.

In a still later call to
Martin, Appellant told her that when he blacked out, he passed out.  He also said that he had mixed xanax and
alcohol that night and that he had had an accident when he had mixed them on a
previous occasion. Toxicology results showed that Appellant had cocaine,
marijuana, and alcohol in his blood and that his BAC was .085.








Christopher confirmed that
Brian would not have let Lance drive the car because Brian would not let just
anyone drive his car.  Additionally,
Christopher testified that Brian and his friends had left Christopher=s house to go to Dallas to pick up Lance=s girlfriend from work.  They
were supposed to pick her up at 2:00 a.m. 
Christopher testified that he had seen Brian, Lance, and Appellant
drinking during the evening and had also seen Appellant smoking marijuana.
Christopher also testified that Brian was too intoxicated to drive his own car
when the three left for Dallas, so he helped Brian into the front passenger
seat. When Christopher last saw the car, Appellant was sitting in the driver=s seat.  When Christopher
returned to the porch, about fifteen to twenty feet away, he heard the car drive
off.  The accident scene was about 5.5
miles from Christopher=s house.

When Martin first met with
Appellant, she and her partner took pictures of Appellant=s injuries, which included a large abrasion on his forehead and some
surface back injuries.  The car had front
seat air bags but no side or rear air bags. 
Evidence conflicted on whether Brian and Appellant had air bag burns,
but there was no evidence that Lance did. 
The driver=s side
windows were intact; the other windows and the windshields were broken.  Lance had glass cuts.








Where the roof had come unattached from the body of the vehicle, the
police located a hair.  Appellant either
shaved or cut his hair on his head and his pubic region after he received more
than a week=s notice of
when and where the State would seize a hair sample pursuant to a search
warrant.  Martin said that Appellant told
her that he had shaved it and that he did so every two to two-and-a-half
days.  Appellant=s wife testified that he had cut it with clippers and that he
typically did so every other day on a regular basis.

Based on the applicable standards of review,[4]
we hold that the evidence is legally and factually sufficient to show that
Appellant was the driver of the car and that he was intoxicated as charged in
the indictment.  We overrule Appellant=s second, third, fourth, and fifth points.

Ineffective Assistance of Counsel








In his first point, Appellant contends that he received ineffective
assistance of counsel at trial.  He
chiefly complains that defense counsel (1) did not challenge the law
enforcement officers=
qualifications as experts pretrial and did not otherwise preserve such a
challenge at trial, and (2) did not object to the trial court=s providing the BAC definition of intoxication in the jury
charge.  Appellant=s motion for new trial did not raise ineffective assistance.  Further, our review of the record reveals
that defense counsel vigorously cross-examined the State=s experts and called experts for Appellant to present Appellant=s theory of the case.  Finally,
providing the complete definition of intoxication in the abstract charge is not
error when, as here, only the prong on which a defendant was indicted appears
in the application paragraph.[5]  Based on the applicable standard of review,[6]
we hold that Appellant has not met his burden of proving ineffective assistance
of counsel at trial.  We overrule his
first point.

Conclusion

Having overruled Appellant=s five points, we affirm the trial court=s judgment.

 

PER CURIAM

PANEL F:    DAUPHINOT, LIVINGSTON, and HOLMAN, JJ.

DO NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  May 18, 2006

 











[1]See Tex.
R. App. P. 47.4.





[2]Moff v. State, 131 S.W.3d 485, 489‑90
(Tex. Crim. App. 2004).





[3]See Tex. Code
Crim. Proc. Ann. art.
38.04 (Vernon 1979); Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim.
App. 2004); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App.
2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).





[4]See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.
Ct. 2781, 2789 (1979); Burden v. State, 55 S.W.3d 608, 612 (Tex. Crim.
App. 2001); Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999),
cert. denied, 529 U.S. 1131 (2000) (all providing legal sufficiency
standard of review); Zuniga, 144 S.W.3d at 481-82, 484-87; Sims v.
State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003); Cain, 958 S.W.2d
at 407 (all providing factual sufficiency standard of review).





[5]Lewis v. State, 815 S.W.2d 560, 562 (Tex. Crim.
App. 1991) (holding no error occurred when trial court gave abstract
instruction on transferred intent but did not include the issue of transferred
intent in the application paragraph), cert. denied, 503 U.S. 920 (1992);
Mallard v. State, 162 S.W.3d 325, 333 (Tex. App.CFort Worth 2005, pet. ref=d).





[6]See Strickland v. Washington,
466 U.S. 668, 687-90, 694, 104 S. Ct. 2052, 2064-66, 2068 (1984); Thompson
v. State, 9 S.W.3d 808, 812-14 (Tex. Crim. App. 1999).