Charles Jefferson Griggs v. The State of Texas

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-120-CR

CHARLES JEFFERSON GRIGGS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 211TH
 DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Between 1:45 a.m. and 2:37 a.m. on April 18, 2003, a 1998 Honda, traveling at around 100 miles per hour, left the roadway, crashed into a grassy knoll, and slammed into at least one telephone pole before landing in a fenced pasture.  Apparently, no one witnessed the accident.  Appellant Charles Jefferson Griggs, one of the car’s three occupants, reported the accident to the police at 2:47 a.m.  It took the police ten to fifteen minutes to locate the wreck because Appellant placed the 911 call from a cell phone at the isolated scene. In addition to Appellant, the car had carried two other young men, Lance Jenkins and Brian Williams.  None of the occupants wore a seatbelt, all were ejected during the crash, and Jenkins and Williams died at the scene.  Appellant did not suffer serious injuries.  Appellant was charged with two counts of intoxication manslaughter.  A jury convicted him on both counts and also entered an affirmative deadly weapon finding for each count.  The trial court sentenced Appellant to forty years’ confinement in the Institutional Division of the Texas Department of Criminal Justice on each count, with the sentences to run concurrently.

In five points, Appellant complains of the legal and factual sufficiency of the evidence to support his conviction and contends that his trial counsel provided ineffective assistance of counsel.  Because we hold that the evidence is legally and factually sufficient and that Appellant has not met his burden of proving ineffective assistance, we affirm the trial court’s judgment.

Sufficiency of the Evidence

In his second, third, fourth, and fifth points, Appellant contends that the evidence is legally and factually insufficient to support his convictions for intoxication manslaughter in the deaths of Williams and Jenkins.  Specifically, he argues that the evidence is insufficient to show that he drove the car because the expert testimony was wrong and incompetent and that the evidence is insufficient to prove intoxication because the only evidence of intoxication is his breath alcohol concentration (BAC) of .085, but he was charged solely on the “loss of faculties” prong.

In performing a sufficiency review, we must consider all the evidence, even if it was improperly admitted.
(footnote: 2)  The jury is the sole judge of the weight and credibility of the evidence.
(footnote: 3)  At trial, the parties stipulated that Brian Williams, the owner of the car, was the front seat passenger.  Appellant’s theory was that Lance Jenkins was driving the car.  The evidence showed the following.  Appellant used Brian Williams’s cell phone to call 911 at 2:47 a.m. and asked, “What did I hit?”  During the investigation, the police learned that at 2:30 a.m., Lance’s girlfriend had called Brian’s cell phone.  An outgoing call to Appellant’s mother-in-law and three outgoing 911 calls from the cell phone occurred shortly thereafter.  The evidence at trial showed that Appellant had called his mother-in-law at 2:37 a.m. and had a conversation with her ten minutes before his 2:47 a.m. conversation with the dispatcher and that he had also placed two 911 hang-ups before actually reporting the accident to the police.  When the first responding officer, Chris Plank of the Denton Police Department, arrived at the scene, he noticed that Appellant was lying on the ground, talking on a cell phone.  Emergency personnel transported Appellant to the hospital, and he was released later that same day.

Witnesses for both parties testified that the car must have been traveling at around 100 miles per hour at the time it left the roadway, that it hit a grassy knoll and a telephone pole, and that it was airborne at some point.  Officer Lisa Martin of the Denton Police Department testified that it appeared that the eastbound car had gone straight instead of curving with the road.  The car ended up in a field across a ditch, a fence, and a stand of trees, landing with the left wheels bent under it and the roof sticking straight up, detached on three sides.  The hood, the inside rearview mirror, and other car parts had come off.  Some car parts were hanging in the trees.  A telephone pole used as a corner fence post, which had been encased in concrete about four feet deep before the wreck, had been pulled out of the ground, along with chunks of concrete.

Because the car was registered to Brian Williams, the police initially assumed that he must have been driving.  Later in the evening on the same day as the accident, when Martin went to Appellant’s home to question him about the accident, he told her that he and Brian had been best friends and that Lance was a new friend and a new roommate of Brian’s.  At that time, Appellant said that he had little recollection of the crash.  He said that he remembered going to a bar in Denton during the evening before the crash occurred.  He also said that he did not know if he had been the driver at the time of the accident but that he had either been the driver or the front seat passenger.  Appellant asked Martin what would happen if he had been the driver.

In a later conversation on April 23, 2003, Appellant told Martin that he had been driving the car earlier in the evening, that only he or Brian would have been driving the car at the time of the accident, and that when Brian drove, he put the seat back as far as it would go because of his disability.  (Brian was partially paralyzed on his right side and wore a leg brace.)  Brian’s brother, Christopher Beamon, testified that Brian would lean the back of the seat very far back when he drove.  Brian’s mother testified that Brian put the seat and the back of the seat back a lot when he drove.  There was no evidence that anyone moved the seat of the vehicle after the wreck.  When Martin examined the seats based on Appellant’s information, she found that the passenger seat was all the way back, but the driver’s seat was not.  Appellant also told Martin that the men would not have stopped to change drivers because they were supposed to pick up Lance’s girlfriend in Dallas at 2:00 a.m. and were already running late.

On a still later occasion, Appellant called Martin and said that he had remembered that he was the front seat passenger and that Brian was driving at the time of the accident.  He said that he had been drinking that night and had no memory of events after 10:30 or 11:00 p.m.  He also said that he blacked out prior to the crash, and they agreed in the conversation that that term meant that he was still talking and functioning but with no recollection. Appellant insisted that there was no way that Lance would have driven because he was a new friend in Brian’s life, and Brian would not have allowed him to drive the car.

In a still later call to Martin, Appellant told her that when he blacked out, he passed out.  He also said that he had mixed xanax and alcohol that night and that he had had an accident when he had mixed them on a previous occasion. Toxicology results showed that Appellant had cocaine, marijuana, and alcohol in his blood and that his BAC was .085.

Christopher confirmed that Brian would not have let Lance drive the car because Brian would not let just anyone drive his car.  Additionally, Christopher testified that Brian and his friends had left Christopher’s house to go to Dallas to pick up Lance’s girlfriend from work.  They were supposed to pick her up at 2:00 a.m.  Christopher testified that he had seen Brian, Lance, and Appellant drinking during the evening and had also seen Appellant smoking marijuana. Christopher also testified that Brian was too intoxicated to drive his own car when the three left for Dallas, so he helped Brian into the front passenger seat. When Christopher last saw the car, Appellant was sitting in the driver’s seat.  When Christopher returned to the porch, about fifteen to twenty feet away, he heard the car drive off.  The accident scene was about 5.5 miles from Christopher’s house.

When Martin first met with Appellant, she and her partner took pictures of Appellant’s injuries, which included a large abrasion on his forehead and some surface back injuries.  The car had front seat air bags but no side or rear air bags.  Evidence conflicted on whether Brian and Appellant had air bag burns, but there was no evidence that Lance did.  The driver’s side windows were intact; the other windows and the windshields were broken.  Lance had glass cuts.

Where the roof had come unattached from the body of the vehicle, the police located a hair.  Appellant either shaved or cut his hair on his head and his pubic region after he received more than a week’s notice of when and where the State would seize a hair sample pursuant to a search warrant.  Martin said that Appellant told her that he had shaved it and that he did so every two to two-and-a-half days.  Appellant’s wife testified that he had cut it with clippers and that he typically did so every other day on a regular basis.

Based on the applicable standards of review,
(footnote: 4) we hold that the evidence is legally and factually sufficient to show that Appellant was the driver of the car and that he was intoxicated as charged in the indictment.  We overrule Appellant’s second, third, fourth, and fifth points.

Ineffective Assistance of Counsel

In his first point, Appellant contends that he received ineffective assistance of counsel at trial.  He chiefly complains that defense counsel (1) did not challenge the law enforcement officers’ qualifications as experts pretrial and did not otherwise preserve such a challenge at trial, and (2) did not object to the trial court’s providing the BAC definition of intoxication in the jury charge.  Appellant’s motion for new trial did not raise ineffective assistance.  Further, our review of the record reveals that defense counsel vigorously cross-examined the State’s experts and called experts for Appellant to present Appellant’s theory of the case.  Finally, providing the complete definition of intoxication in the abstract charge is not error when, as here, only the prong on which a defendant was indicted appears in the application paragraph.
(footnote: 5)  Based on the applicable standard of review,
(footnote: 6) we hold that Appellant has not met his burden of proving ineffective assistance of counsel at trial.  We overrule his first point.

Conclusion

Having overruled Appellant’s five points, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: DAUPHINOT, LIVINGSTON, and HOLMAN, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  May 18, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Moff v. State
, 131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004).

3:
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004);
 Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000); 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

4:
See Jackson v. Virginia
,
 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001); 
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000) (all providing legal sufficiency standard of review); 
Zuniga
, 144 S.W.3d at 481-82, 484-87; 
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003); 
Cain
, 958 S.W.2d at 407 (all providing factual sufficiency standard of review).

5:
Lewis v. State
, 815 S.W.2d 560, 562 (Tex. Crim. App. 1991) (holding no error occurred when trial court gave abstract instruction on transferred intent but did not include the issue of transferred intent in the application paragraph), 
cert. denied
, 503 U.S. 920 (1992); 
Mallard v. State
, 162 S.W.3d 325, 333 (Tex. App.—Fort Worth 2005, pet. ref’d).

6:
See
 
Strickland v. Washington
, 466 U.S. 668, 687-90, 694, 104 S. Ct. 2052, 2064-66, 2068 (1984); 
Thompson v. State
, 9 S.W.3d 808, 812-14 (Tex. Crim. App. 1999).