**Affirmed as Modified and Opinion filed January 23, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00876-CR

---

### JOE AMOS SHAW, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 178th District Court
Harris County, Texas
Trial Court Cause No. 1292395**

---

## O P I N I O N

A jury convicted appellant Joe Amos Shaw of murder and assessed his punishment, enhanced by a prior conviction for attempted capital murder, at life. The trial court sentenced appellant accordingly and assessed court costs against him. Appellant asserts that (1) the trial court reversibly erred by denying him the opportunity to impeach the assistant medical examiner regarding a crime of moral turpitude; (2) the trial court reversibly erred by allowing testimony during punishment regarding either an irrelevant extraneous offense or victim impact

evidence; (3) he was entitled to a sua sponte extraneous offense jury instruction in the punishment charge; and (4) court costs should be deleted from the judgment because there is insufficient evidence to support them. We agree that insufficient evidence supports the court costs, reform the judgment to delete these costs, and affirm the judgment as modified.

## BACKGROUND

Appellant was charged with the murder of Rhonda Scott, the woman with whom he lived at the time of her death. The decedent's body was found by family members in her garage on January 15, 2011, a day after she last spoke to anyone. Her car was missing but was later found abandoned through the GPS tracking device installed in it. Her family members contacted the police, who arrived at the scene. Appellant was required to wear an electronic ankle monitor during the time he lived with the decedent. Officers discovered that the ankle monitor appeared to have been cut off, the strap was cut through, and the bracelet was located in the bedroom. A unit in the home displayed the words "bracelet gone" and emitted a loud beeping noise. Appellant was not at the house. While at the scene, the officers received notice that appellant's ex-wife contacted police and requested a welfare check at the decedent's residence "to make sure that everybody was . . . okay."

At appellant's trial, his ex-wife testified that appellant arrived at her home the evening of the decedent's death in the decedent's car. She stated he had been drinking and was despondent and suicidal; he told her he had been fighting with the decedent. Another of appellant's friends also testified, relating that appellant also told him he had been fighting with the decedent. Several days after the discovery of the decedent's body, police discovered appellant at a local hospital by

2

tracing a phone call he made to his ex-wife. When approached by police officers, appellant provided a fictitious name before he was arrested.

At appellant's trial, an assistant medical examiner (M.E.) testified regarding the injuries sustained by the decedent. The decedent had a gunshot wound beneath her eye, with gun particle burns to her face. These particle burns indicated that the shot was fired from more than two inches and less than two feet from her face. She had no defensive wounds and the blood found on her hands indicated that they could have been close to her face when the bullet struck her. The assistant M.E. testified that the manner of the decedent's death was homicide.

After hearing the evidence and argument of counsel, the jury found appellant guilty as charged and proceeded to the punishment phase of his trial. Appellant pleaded "not true" to the alleged enhancement of a prior conviction for attempted capital murder.

As is relevant to this appeal, the State presented a fingerprint expert who testified that appellant's prints appeared on a penitentiary packet showing a conviction for attempted capital murder in Bell County, Texas. Appellant was convicted on July 20, 1982; the offense occurred on May 21, 1982. The State called a witness from Killeen, Texas, Doris Mashburn, who testified about a woman named Lorene Johnson. Ms. Mashburn knew Lorene very well; Lorene had worked for her for a long time. Ms. Mashburn distinctly remembered May 21, 1982, because that was the day that she opened her door to discover Lorene passed out and bleeding from numerous stab wounds. Ms. Mashburn accompanied Lorene to the hospital, where hospital personnel were able to save Lorene's life. According to Ms. Mashburn, Lorene had to have rehabilitation and when she returned to work, her arm was in a cast. When Lorene learned about this case, she had headaches and was disturbed.

3

After both sides rested and closed, the trial court charged the jury. The jury found the enhancement paragraph "true" and assessed punishment at confinement for life in the Texas Department of Criminal Justice, Institutional Division. The trial court signed a judgment in accordance with the jury's verdict and assessed court costs of $334 against appellant in the judgment. This appeal timely followed.

## ANALYSIS

### A.  Impeachment of Assistant M.E.

In his first issue, appellant asserts that the trial court reversibly erred by denying him the opportunity to impeach the assistant M.E. regarding a crime of moral turpitude. Before calling the assistant M.E., the prosecutor for the State explained at a bench conference that the assistant M.E. was currently on a pretrial diversion that began in October 2012 for the felony offense of giving a false statement to obtain credit. The prosecutor explained that the assistant M.E. performed the autopsy on the decedent before being placed on the pretrial diversion and that she would be testifying about the autopsy and her report. The prosecuting attorney asked the trial judge if he was going to permit appellant to question this witness regarding either the felony offense or the pretrial diversion.

"Exposing a witness's motivation to testify for or against the accused or the State is a proper and important purpose of cross-examination." *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998). But a trial judge has some discretion and may limit cross-examination as inappropriate for a number of reasons. *See id.*; *see also Irby v. State*, 327 S.W.3d 138, 147–49 (Tex. Crim. App. 2010). "A long line of cases hold that a witness may be cross-examined for bias concerning a pending charge because his testimony may be 'given under a promise or expectation of immunity, or under the coercive effect of his detention by officers . . . conducting the present prosecution.'" *Irby*, 327 S.W.3d at 149

4

(quoting *Alford v. United States*, 282 U.S. 687, 693 (1931)). But in the context of cross-examining a witness subject to pending charges, for evidence of the pending charges to be admissible, the proponent must establish some causal connection or logical relationship between the pending charges and the witness's vulnerable relationship or potential bias or prejudice for the State. *See id.* at 148. Here, the assistant M.E. had been placed on pretrial diversion for an offense that she was charged with months *after* she had performed the autopsy on the decedent.

Appellant's counsel acknowledged the tenuous impeachment value of this evidence:

> I would agree that the impeachment value is not that great, especially because she's a doctor just testifying through her examination of the body. But I believe that the -- I guess -- I guess the charge against her is, in fact, a crime showing, you know, moral turpitude, and I believe it should affect the credibility.

Appellant's counsel further asserted that the assistant M.E. might hope to curry favor with the State through her testimony while on the pretrial diversion to prevent a final conviction. The trial court concluded that appellant had not established that there was a causal connection between the assistant M.E.'s testimony and her having been placed on pretrial diversion. Thus, the trial court denied appellant's request to cross-examine her regarding the pretrial diversion.

We agree with the trial court that appellant, as the proponent of the evidence, failed to establish any logical relationship between the assistant M.E.'s pretrial diversion (her alleged "vulnerable relationship" with the State) and a motive to provide biased trial testimony. *See id.* Indeed, her trial testimony was limited to reviewing the autopsy she performed on the decedent, and she relied largely on the report she had prepared at the time she performed the autopsy in January 2011. There is no allegation that the assistant M.E.'s testimony at trial in any way

5

deviated from her written report, which was prepared well before she was charged with this felony offense or placed on pretrial diversion for it.[1]  The trial court did not act outside its discretion by appropriately limiting appellant's cross-examination of the assistant M.E.  *See Carpenter*, 979 S.W.2d at 634.

Appellant's first issue is overruled.

## B.    Extraneous Offense or Victim Impact Evidence at Punishment

In his second issue, appellant asserts that Ms. Mashburn's testimony, described above, consisted of either extraneous offense or improper victim impact evidence.  We conclude that appellant failed to preserve either of these issues for our review.

To preserve error for appellate review, a timely and specific objection is required.  Tex. R. App. P. 33.1(a)(1)(A).  In other words, the objecting party must let the trial judge know what he wants, why he thinks he is entitled to it, and do so clearly enough for the judge to understand him at a time when the judge may do something about it.  *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).  Additionally, a party must object each time the inadmissible evidence is offered or obtain a running objection.  *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003).  Finally, a complaint on appeal must comport with the objection made at trial.  *See Clark*, 365 S.W.3d at 339.

Several days before Ms. Mashburn was present to testify, the State informed the trial court and appellant's counsel, outside the presence of the jury, that she would be testifying about the enhancing offense.  The prosecuting attorney also

---

[1] Instead, appellant points to the State's arguments during closing in which the prosecutor made inferences regarding appellant's *mens rea* from the assistant M.E.'s testimony.  None of this argument, however, has any bearing on whether it was appropriate to impeach the assistant M.E. regarding the pretrial diversion.

discussed another witness who was unavailable to testify at that time. The trial court asked if both witnesses were "material to punishment," and the State responded that they were. In response, appellant's counsel argued, "I'm going to have an objection to all that, because they already have the conviction. They have the fact that he's on parole, the fact that he got a 35-year sentence. It's cumulative and it's prejudicial. It has very little probative value." He further asserted that these witnesses' testimony would consist of hearsay and violate the Confrontation Clause. The trial court sustained appellant's hearsay objection in advance, but stated that he needed to hear the witnesses' testimony before he could make any further rulings.

During Ms. Mashburn's testimony, appellant objected several times. He first objected to one of the State's questions on relevance grounds, but failed to obtain a ruling from the trial court.[2] He made two hearsay objections, both of which were sustained by the trial court. He also objected to another question, asserting that it had been "asked and answered," which the trial court overruled. These were the only objections appellant asserted during Ms. Mashburn's testimony. To the extent that appellant complains that Ms. Mashburn provided improper victim-impact testimony, he failed to object to her testimony on that basis. Accordingly, he failed to preserve this part of his issue for our review because he did not object to the admission of any victim-impact testimony at trial. *See Mays v. State*, 318 S.W.3d 368, 391–92 & n.92 (Tex. Crim. App. 2010)

---

[2] The specific exchange where the relevance objection was lodged occurred as follows:

Q.     What kind of person was – is Lorene?

A.     She was very caring. Like I said she practically raised my kids. She was fun.

[Appellant's Counsel]:   Judge, I'm going to object. This is irrelevant, Your Honor, at this point.

THE COURT:  All right. Well, she placed [sic] in the community. Bu[t] anyway, let's get to the point.

7

(stating that appellant failed to preserve appellate complaint about admission of victim-impact evidence by objecting to such testimony at trial).

After Ms. Mashburn finished testifying, she was excused, and the State rested its case-in-chief. Appellant's counsel then approached the bench to request a "brief recess to put something on the record." The trial court dismissed the jury, and appellant's counsel moved to strike Ms. Mashburn's testimony from the record, asserting there had

> been no tie at all on the testimony she presented to this jury in reference to [appellant.] . . . There is nothing to show that whatever is it she's talking about, whoever this lady is this Lorene Johnson, has anything to do with this defendant.
>
> There's a judgment and sentence that's been entered, but that is it. So I object. I would ask the jury be instructed to disregard the testimony of Ms. Mashburn because it is totally irrelevant to this case, Your Honor.

The trial court denied the motion, stating, "That objection needs to be contemporaneous with the offer. There was no objection in front of this jury."

First, we note that there was no evidence provided by Ms. Mashburn linking her testimony about Lorene Johnson to appellant. Regardless of this apparent evidentiary deficit, we agree with the trial court that appellant failed to timely object to her testimony on relevance grounds or obtain a running objection on this basis. *See Valle*, 109 S.W.3d at 509. Thus, the trial court did not abuse its discretion in refusing to strike her testimony on the grounds presented by appellant. *See Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002) (providing that we review a trial court's ruling on the admissibility of evidence for an abuse of discretion).

Moreover, our review of the record indicates that the parties were all aware that Ms. Mashburn was present to testify regarding the enhancing offense, not

8

about an extraneous offense. *See Clark*, 365 S.W.3d at 333 ("In determining whether a complaint on appeal comports with a complaint made at trial, we look to the context of the objection *and the shared understanding of the parties at the time*." (emphasis added)). There is simply no indication in our record that the trial court or the parties were under the impression that Ms. Mashburn's testimony concerned anything other than the enhancing offense. The State informed the trial court and appellant before Ms. Mashburn was called to testify that she was going to testify about the circumstances of the enhancing offense. The date of the enhancing offense matched the date of the offense Ms. Mashburn described. Under the circumstances of this case, we conclude that appellant's complaint on appeal regarding an "irrelevant" enhancing offense does not comport with the objection made at trial. *See id.* Thus, appellant has failed to preserve this issue for our review. *See Brown v. State*, 6 S.W.3d 571, 582 (Tex. App.—Tyler 1999, pet. ref'd). We overrule appellant's second issue in its entirety.

Turning to appellant's third issue, he asserts that, "in the alternative," he was entitled to a sua sponte extraneous offense instruction. But here, as discussed above, the parties all shared an understanding that Ms. Mashburn's testimony concerned the enhancing offense, not an extraneous offense. *Cf. Clark*, 365 S.W.3d at 333. And the trial court provided the jury the following enhancement instruction:

> The enhancement paragraph of the indictment alleges that before the commission of the offense for which you have found the defendant guilty, on July 20, 1982, in Cause No. 31,041, in the 27th District Court of Bell County, Texas, the defendant was convicted of the felony of attempted capital murder. To this allegation in the enhancement paragraph of the indictment the defendant has pleaded "not true".
>
> If you believe from the evidence beyond a reasonable doubt that the allegations set out in the enhancement paragraph of the indictment

are true, you will state in your verdict that you find "true" the allegations of the enhancement paragraph of the indictment; but unless you so believe, or if you have a reasonable doubt thereof, you will answer "not true" to the allegations of the enhancement paragraph of the indictment.

Appellant has not challenged the sufficiency of the evidence to support the jury's finding of "true" to the enhancement paragraph.

Further, in *Bluitt v. State*, the Court of Criminal Appeals held that the trial court did not err in refusing to give a requested extraneous offense instruction when all of the evidence regarding the appellant's prior criminal behavior "was in the form of prior offenses which had been subjected to judicial testing under the proper burden and the burden had been met." 137 S.W.3d 51, 54 (Tex. Crim. App. 2004). Here, appellant had confessed to the enhancing offense, although he pleaded "not true" to the enhancement paragraph at trial, and was on parole for this offense when he committed the instant offense. Appellant does not dispute that the evidence admitted regarding his prior criminal behavior was in the form of a prior offense that had been subjected to judicial testing under the proper burden and that the burden had been met. *See id.* Accordingly, had appellant requested an extraneous offense instruction, the trial court would not have erred in denying his request because "[g]iving such an instruction is a useless act if no unadjudicated offenses have been introduced." *Id.*

In short, the trial court charged the jury regarding the burden of proof regarding the enhancing offense. There is no evidence of an extraneous offense committed by appellant in our record warranting an extraneous offense instruction.[3] *See id.*; *cf. Clark*, 365 S.W.3d at 333.

---

[3] Indeed, if Ms. Mashburn described an extraneous offense, as appellant contends, she described an offense unrelated to appellant because she never testified that appellant was the person responsible for the injuries to Lorene.

Accordingly, under the specific facts of this case, we conclude that appellant's third issue is without merit, and we overrule it.

## C.    Court Costs

In appellant's fourth and final issue, he challenges the sufficiency of the evidence to support the trial court's imposition of $334 in court costs. In *Johnson v. State*, this court held that if the record does not support the assessment of a certain dollar amount in costs, the trial court errs in entering a specific dollar amount in its judgment. 389 S.W.3d 513, 516 (Tex. App.—Houston [14th Dist.] 2012, pet. granted).

As in *Johnson*, it is undisputed that the record contains no bill of costs or any other evidence that would support the specific amount, $334, assessed in the judgment. *See id.* The clerk's record contains a printout of a computer screen from the Harris County Justice Information Management System (JIMS), entitled "J.I.M.S. Cost Bill Assessment," identifying $334 in court costs. The printout is signed and dated "11/7/12," which is nearly two months *after* the trial court signed its judgment including costs.

This court has determined that an unsigned computer screen printout from JIMS that does not appear to have been brought to the attention of the trial court judge before he signed the judgment is not an actual bill of costs as contemplated by article 103.001. *See Jelks v. State*, 397 S.W.3d 759, 760 (Tex. App.—Houston [14th Dist.] 2013, pet. filed) (concluding that a computer screen printout from JIMS signed by an unidentified individual, when printout was not presented to the trial judge, could not be considered an appropriate bill of costs); *Johnson*, 389 S.W.3d at 515 n.1; Tex. Code Crim. Proc. Ann. art. 103.001. The JIMS document was signed and dated *after* the trial court's judgment was signed; thus there is

11

evidence that it could not have been presented to the trial court before the specific dollar amount was included in the judgment. This JIMS document cannot be considered an appropriate bill of costs. *See Jelks*, 397 S.W.3d at 760; *Johnson*, 389 S.W.3d at 515 n.1. No other evidence in the record supports the specific dollar amount assigned as court costs. *See Jelks*, 397 S.W.3d at 760; *Johnson*, 389 S.W.3d at 515 n.1.

The State argues that there are numerous provisions in the Texas Code of Criminal Procedure authorizing various court costs to be paid by a defendant when convicted of a felony offense. The State suggests several specific articles of the Code of Criminal Procedure and sections of the Local Government Code providing for fees that, if assessed against appellant, would add up to an amount of at least $334. Therefore, the State maintains, the evidence is sufficient to support the $334 in court costs reflected in the judgment. But we have previously rejected this argument. In *Rogers v. State*, we held that to affirm the judgment for costs merely because a number of statutes authorize certain costs or fees that could have been assessed against the defendant—without regard to whether they were actually assessed—would be speculative. 402 S.W.3d 410, 420 (Tex. App.—Houston [14th Dist.] 2013, pet. filed).

The trial court did not err in ordering appellant to pay court costs, as such costs are mandated by law, but the court did err in entering a specific dollar amount without any support in the record for that dollar amount. *See Johnson*, 389 S.W.3d at 516. Because there is no evidence in the record to support the trial court's assessment of a specific dollar amount as court costs, we sustain appellant's fourth issue and modify the trial court's judgment to delete the specific dollar amount of costs assessed. *See id.*; *see also Mayer v. State*, 309 S.W.3d 552, 554–

56 (Tex. Crim. App. 2010) (holding that sufficient evidence must support an assessment of costs in a judgment).

## CONCLUSION

We have overruled appellant's first three issues. However, we have sustained appellant's fourth issue. Accordingly, we modify the trial court's judgment to delete the specific dollar amount of costs assessed and affirm the judgment as modified.


/s/    Sharon McCally
Justice

Panel consists of Justices McCally, Busby, and Donovan.

Publish — Tex. R. App. P. 47.2(b).