**AFFIRMED; Opinion Filed August 18, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01670-CR
### No. 05-12-01672-CR

**QUIDALE D. DICKERSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause Nos. F-1159093-L, F-1159094-L**

## MEMORANDUM OPINION
Before Justices Lang, Myers, and Brown
Opinion by Justice Lang

Quidale Dickerson was charged by indictment with two counts of aggravated assault on a public servant. He pled not guilty to both counts. Following a jury trial, he was convicted on both counts and sentenced to thirty years' confinement on each count, with his sentences to run concurrently.

Dickerson raises four issues on appeal. Specifically, he contends the trial court erred (1) when it failed to make findings of fact regarding the voluntariness of his "custodial statement"; (2) when it overruled his objection to the involuntariness of his "custodial statement"; (3) when it admitted a security video tape into evidence; and (4) when it sustained the State's objection to his trial counsel's argument during the punishment phase, thereby violating his right to counsel.

For the following reasons, we decide against Dickerson on all four issues and affirm his conviction on both counts.

## I. FACTUAL AND PROCEDURAL BACKGROUND

*A. The DPD Shooting*

According to the record, around 12:30 A.M. on August 23, 2011, the Dallas Police Department (DPD) responded to a robbery on Holly Hill Road. DPD dispatched several uniformed officers in four police cars. The officers were able to apprehend four individuals matching the suspects' description.

While officers were still investigating at the scene, shots were fired. Officer Darrell Stevens testified he counted seven or eight shots and recalled hearing the bullets' "whizzing" sounds before they struck a nearby fence. He testified the bullets sounded as though they were "about a couple feet" from his person and recalled seeing "muzzle flashes" approximately one hundred feet from where he and the other officers were standing.

After the shots were fired, the officers released the suspects and went down the street towards the direction from which the shots were fired. Officer Stevens testified they found approximately seven to eight shell casings in that area. About twenty officers, a K-9 unit, and a helicopter then searched the area to locate the shooter, but they were unable to find a suspect that night.

*B. The DART Station Shooting*

Later that same day, Dallas Area Rapid Transit (DART) Police Officer Joseph Schwanz and two plainclothes officers arrived at a DART train station. Officer Schwanz testified, as he pulled up to the station, he heard a couple of gunshots and observed several people running down the station stairs "in a panic." Officer Schwanz went to attend to a man who was bleeding from

his leg, while the plainclothes officers ran upstairs in search of the shooter. Officer Schwanz stated the victim pointed at Dickerson and said, "That's the guy that shot me right there."

Officer Schwanz then attempted to stop Dickerson from boarding a bus, but Dickerson ignored the command and entered the bus. Officer Schwanz ordered the other patrons to evacuate the bus before he and another officer boarded. They then gave Dickerson multiple verbal commands to "put his hands where [they] could see him [sic]." Dickerson complied after the third command and was arrested.

Following his arrest, detectives recovered a gun from the bus Dickerson had boarded, stuffed under the seat where Dickerson had been sitting at the time of his arrest. Ballistics testing determined that the eight shell casings found after the DPD shooting were fired from this same gun.

Detective Eduardo Ibarra came into contact with Dickerson after "some information had developed" identifying similarities between the incident at the DART station and the DPD incident Ibarra had been assigned to investigate. At a DPD station, Ibarra testified he read Dickerson the Miranda warnings and began to question him. This interview was recorded.

Ibarra testified Dickerson gave him sufficient facts during the interview to suggest he was "at least generally at the scene" of the DPD shooting. However, Dickerson's explanation for both the DPD and DART station shootings changed throughout the interview. Initially, Dickerson denied committing the DPD shooting. Instead, Dickerson claimed a "partner" of his named "Choppa"[1] had possession of the gun at the time of the DPD shooting, committed the shooting, and then gave the gun to Dickerson's girlfriend "some time that morning," explaining "how the gun ended up back in [Dickerson's] apartment."

---

[1] Ibarra testified, throughout the course of the interview, Dickerson gave the "vicinity of where [Dickerson] thought [Choppa] lived," but never provided Choppa's real name.

After several hours of questioning, Dickerson confessed to both shootings. As to the DPD shooting, Dickerson told Ibarra he was angry at the individuals detained by the police because they had robbed his cousin. He stated he had hoped, by shooting in the officers' direction, the officers would leave the area and the arrested individuals behind, so Dickerson could deal with them on his own. As to the DART station shooting, Dickerson gave a voluntary written statement, admitting he had aimed the gun towards the ground, but had shot someone in the leg by accident.

## II. VOLUNTARINESS OF "CUSTODIAL STATEMENT"

### A. Standard of Review and Applicable Law

As an initial matter, in order to preserve error for appellate review, a timely and specific objection is necessary. *Shaw v. State*, 420 S.W.3d 857, 861 (Tex. App.—Houston 2014, pet. struck) (citing TEX. R. APP. P. 33.1(a)(1)(A)). Thus, "the objecting party must let the trial judge know what he wants, why he thinks he is entitled to it, and do so clearly enough for the judge to understand him at a time when the judge may do something about it." *Id.* at 861-62 (citing *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012)).

"[W]hen the defendant affirmatively asserts during trial he has 'no objection' to the admission of the complained of evidence, he waives any error in the admission of the evidence despite the pre-trial ruling." *Ex Parte Moore*, 395 S.W.3d 152, 157 (Tex. Crim. App. 2013) (quoting *Moraguez v. State*, 701 S.W.2d 902, 904 (Tex. Crim. App. 1986) (en banc)); *see also Dean v. State*, 749 S.W.2d 80, 83 (Tex. Crim. App. 1988) (holding that where defendant was unsuccessful on a pre-trial hearing on motion to suppress evidence, error was waived where defendant affirmatively asserted later during trial he had "no objection" to the admission of the complained of evidence). Further, a defendant waives error by offering his statement into evidence after the trial court has overruled the defendant's motion to suppress the statement on

the grounds that the defendant's statement was involuntary. *Soliz v. State*, 432 S.W.3d 895, 903 (Tex. Crim. App. 2014). Additionally, "[a]n error in the admission of evidence is cured when the same evidence comes in elsewhere without objection." *Rivera-Reyes v. State*, 252 S.W.3d 781, 787 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *Anderson v. State*, 717 S.W.2d 622, 627 (Tex. Crim. App. 1986) (en banc) and *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984) (en banc)).

The Code of Criminal Procedure provides, "In all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions." TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (West 2013). Even if neither party requests written findings at any level of the proceedings and the issue is not considered by the lower court, "written findings are required in all cases concerning voluntariness." *Vasquez v. State*, 411 S.W.3d 918, 920 (Tex. Crim. App. 2013).

### C. Application of the Law to the Facts

In his first and second issues, Dickerson argues the trial court erred by not making findings of fact regarding the voluntariness of statements he made during an interview with DPD officers and by overruling his objection to the voluntariness of this "custodial statement." As to the first issue, Dickerson contends the Code of Criminal Procedure requires this appeal be abated, so the trial court can perform its "mandatory duty" of preparing findings of fact regarding the voluntariness of his confession. As to the second issue, Dickerson asserts his statements made while in DPD custody was involuntary because he was "confined for an excessive amount of time"[2] and not permitted to use the telephone.

---

[2] Dickerson asserts he had been in "continuous police custody" for 12.5 hours.

In response to both arguments, the State argues, because Dickerson's counsel did not object when the State admitted excerpts from the videotaped interview and instead introduced the interview into evidence himself, Dickerson "waived voluntariness and made written findings unnecessary." We agree with the State.

The record reflects that, though Dickerson's counsel raised the issue of voluntariness as to the videotaped interview at one point, on two occasions he waived the same voluntariness issue and the attendant right to findings of fact. The first time was at the pre-trial hearing, where the videotaped interview was discussed. At that time, Dickerson's counsel stated on the record, "We don't need to have a *Jackson v. Denno* on this particular tape, if it is used in trial because my client did waive his rights, and I saw nowhere during the conversation did he retract that . . . So, to save time and effort in this economy, we're gonna waive that at this time . . ." *See Moore*, 395 S.W.3d at 157.

However, later during trial and midway through Ibarra's direct examination, Dickerson's counsel appeared to change his position when the State announced its intent to have Ibarra testify as to Dickerson's "admissions" in the videotaped interview. Dickerson's counsel argued, "I believe those statements were coercive and not voluntary, and we would object to any statements my client made to [Ibarra] or Officer Ermatinger." When asked by the State what portions of the tape he objected to, Dickerson's counsel stated, "I say the whole thing is coercive . . . The whole tape." The Court responded to counsel's request by stating it would make its ruling when it had a chance to see the video and then dismissed the jury for the day.

The following exchange took place the next morning before the trial court and outside the presence of the jury:

The Court: Anything – any records to make prior to resumption of testimony?

[The State]: Well, Judge, I think as we left it, Defense had asked for a hearing on the voluntariness of the statement . . .

The Court: Defense.

[Defense]: Actually, *Defense didn't ask for a hearing* . . . I don't think I asked for a hearing. I just said I objected to the totality of the tape.

The Court: Right. The Court's made its ruling.

[Defense]: Correct.

(Emphasis added).

The trial continued and later that same day, the videotaped interview was addressed again. In a series of offers, the State introduced several portions of the videotaped interview for all purposes. The defense replied, "No objection" each time. *See Moore*, 395 S.W.3d at 157. Additionally, after cross-examining Detective Ibarra about the videotaped interview, Dickerson's counsel stated, "[A]t this time, we will go ahead and submit the [DPD interview] tape for all purposes." *See Soliz*, 432 S.W.3d at 903; *see also Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (holding that, though generally a party must continue to object each time inadmissible evidence is offered, there are two exceptions to this rule: (1) counsel obtains a running objection or (2) counsel requests a hearing outside the presence of the jury).

On this record, we conclude the voluntariness of Dickerson's videotaped interview by DPD officers was waived on two separate occasions. Further, we conclude the single objection to the videotaped interview that Dickerson made did not preserve a point for appeal because later he waived error when he announced he had no objection to the State's admission of portions of the videotaped interview, *see Moore*, 395 S.W.3d at 157, and then introduced the interview into evidence "for all purposes." *See Soliz*, 432 S.W.3d at 903. Because an objection to the voluntariness of Dickerson's "custodial statement" has not been preserved for our review, we

need not abate the proceedings for findings of fact. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (requiring findings of fact in "all cases where a question is raised as to the voluntariness of a statement of an accused").

For these reasons, we decide against Dickerson on his first and second issues.

### III. INTRODUCTION OF SECURITY VIDEO TAPE

In his third issue, Dickerson argues the trial court erred by admitting into evidence a security video tape recorded at a local corner store. Dickerson asserts the State intended to use this tape to discredit his girlfriend, Shamonica Claybon, whose testimony was offered by Dickerson to provide an alibi for him at the time of the DPD shooting.

During cross-examination by the State, Claybon testified that Dickerson was with her, several blocks away at a corner store, at 12:30 A.M., the time of the shooting, and that he never left her sight while they were at this store. However, the State offered two "still shots" from a security video tape taken at the corner store to cast doubt on her story since the video's time stamp read 10:12 P.M. on one "still shot" and 10:13 P.M. on the other. Claybon identified herself and Dickerson in the photographs. When the State offered the "still shots" into evidence, Dickerson's counsel took Claybon on voir dire for the purposes of making an objection.

The following exchange took place between Claybon and Dickerson's counsel during this voir dire:

[Defense Counsel]: . . . Do you have any knowledge if the time frame and the dates on these photographs are accurate?

Claybon: No, sir.

[Defense Counsel]: Do you have any way of saying that you know that that is true and correct?

Claybon: No, sir.

[Defense Counsel]: We would object to [the "still shots"] without having some sponsoring person as to what these photographs are, the time frame on these, Judge. That's improper.

The State responded that an instruction could be given to "disregard the time," but that Claybon had affirmatively identified herself in the "still shots." The Court requested to see these images. After an off-the-record discussion held at the bench, the trial judge overruled Dickerson's counsel's objection.

The State resumed Claybon's cross-examination and sought to play the security video from which the "still shots" had been taken to "refresh [Claybon's] memory." Defense counsel objected to the State's proposed action, "until such time as we examine this [video], since we didn't see it before the trial." The jury was dismissed for a short break, and the video was played for both Claybon and the defense outside of the jury's presence. After viewing the video, Dickerson's counsel again raised the issue of admissibility and the following exchange took place:

[Defense Counsel]: As far as my prior objection, as sponsoring of the time frame and the photograph, when it was taken, by who it was taken, that objection still stands.

The Court: Your objection goes to weight, not admissibility.

[Defense Counsel]: I agree. But I still object.

After the jury reentered the courtroom, the State again offered the security video into evidence for all purposes. Defense counsel stated it "still would make our previous objection." The Court responded, "Okay. The ruling will be the same. The exhibit is admitted."

Dickerson's brief on appeal asserts the trial court erroneously admitted the security tape because it was not properly authenticated. However, the State asserts Dickerson did not preserve the issue of the tape's authentication for review because Dickerson's counsel did not object to

the tape's admissibility at trial. The State further argues, even if the issue had been preserved, the trial court did not abuse its discretion in overruling the defense's objection. We agree with the State.

On appeal, Dickerson argues the trial court erred in admitting the video tape because it had not been properly authenticated. However, while his objection at trial did assert authentication at first, Dickerson's counsel acknowledged in discussions with the trial court the objection went to the "weight" of the evidence, not its admissibility. Accordingly, the objection made at trial does not comport with the point raised on appeal. *See Shaw*, 420 S.W.3d at 861 (indicating objecting party must let the trial judge "know what he wants" in his objection so "the judge may do something about it"). Dickerson's point is not preserved. *See id.*

Thus, we decide against Dickerson on his third issue.

## IV. RULING OF IMPROPER ARGUMENT VIOLATED DICKERSON'S RIGHT TO COUNSEL

In his fourth issue, Dickerson argues the trial court violated his right to counsel when it sustained the State's objection to his defense counsel's jury argument during the punishment phase of his trial.

### A. Standard of Review

Appellate courts review rulings on jury argument objections for an abuse of discretion. *Thompson v. State*, 426 S.W.3d 206, 211 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (citing *Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010)). Although the trial court has broad discretion in controlling the scope of closing arguments, "it may not prevent defense counsel from making a point essential to the defense." *Nzewi v. State*, 359 S.W.3d 829, 841 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (citing *Lemos v. State*, 130 S.W.3d 888, 892 (Tex. App.—El Paso 2004, no pet.)).

"[I]mproper denial of a jury argument may constitute a denial of the right to counsel." *McGee v. State*, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989) (en banc). However, this assumes "the jury argument is one the defendant is entitled to make." *Id.* The defendant cannot be deprived of effective assistance of counsel unless the trial court's actions "prevented [defendant's] counsel from doing what he had the legal right to do." *Arnold v. State*, 68 S.W.3d 93, 102 (Tex. App.—Dallas 2001, pet. ref'd) (citing *Jackson v. State*, 992 S.W.2d 469, 476 (Tex. Crim. App. 1999) (per curiam)).

### B. Applicable Law

The Code of Criminal Procedure provides:

> In all criminal cases, other than misdemeanor cases of which the justice court or municipal court has jurisdiction, which are tried before a jury on a plea of not guilty, the judge shall, before argument begins, first submit to the jury the issue of guilt or innocence of the defendant of the offense or offenses charged, without authorizing the jury to pass upon the punishment to be imposed.

TEX. CODE CRIM. PROC. ANN. art. 37.07 (West 2013). That is, by the punishment phase of a jury trial, "the defendant has already been found guilty beyond a reasonable doubt of each element of the offense charged." *Fields v. State*, 1 S.W.3d 687, 688 (Tex. Crim. App. 1999) (en banc).

Before counsels' jury arguments, the trial court is required to deliver to the jury "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2013). Although the jury is the "exclusive judge of the facts," it is nonetheless bound to receive and be governed by the court's charge. TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2013). Likewise, jury argument that misstates the law or that is contrary to the instructions of the jury charge is improper. *Kuhn v. State*, 393 S.W.3d 519, 540 (Tex. App.—Austin 2013, pet. ref'd).

*C. Application of the Law to the Facts*

In his fourth and final issue, Dickerson asserts the trial court erred when it sustained the State's objection to Dickerson's defense counsel's argument at the punishment phase of his trial. Specifically, during his argument to the jury at the punishment phase of Dickerson's trial, Dickerson's counsel stated, "[Dickerson's] been in jail 14 months . . . I'm not arguing with you. I still believe Choppa shot that gun. He's just stupid. He comes in and takes the heat for his friends." The State objected, arguing these statements were improper argument at that phase of the trial, and the trial court sustained the objection. In this appeal, Dickerson contends his trial counsel was "merely making a plea of mitigation to the jury" and the trial court's action constituted an error that violated his right to counsel.

The State responds that, at the time its objection was made, the trial court had already accepted the jury's guilty verdicts and had instructed the jury that deliberations on Dickerson's guilt or innocence had ended. The trial court charged the jury as follows:

> The Court has received and accepted your verdict of guilty, and you will no longer concern yourselves with the innocence or guilt of the defendant and shall now limit your deliberations, under all the law and evidence in this case, to the question of punishment, which is now your duty to assess.[3]

Thus, the State argues, when Dickerson's counsel "invited the jury to reconsider its verdict of guilty" through his jury argument, the trial court correctly sustained the State's objection. Moreover, the State asserts, even if limiting counsel's argument did constitute error, such an error was harmless because Dickerson had "made the same argument several times" and because "the jury had already rejected the Choppa theory in its guilty verdict." We agree with the State.

---

[3] Dickerson's counsel affirmatively stated he had "no objections" to this jury charge.

The portions of counsel's argument to which the State objected addressed guilt or innocence. Such argument was contrary to the trial court's instruction that the jury "no longer concern themselves with [Dickerson's] guilt or innocence" and improper. *See Kuhn*, 393 S.W.3d at 540. By the punishment phase of the trial, Dickerson had already been found "guilty beyond a reasonable doubt of each element of the offense charged." *See Fields*, 1 S.W.3d at 688; *see also* TEX. CODE CRIM. PROC. ANN. art. 37.07 (stating, in criminal jury trials, the judge shall first submit to the jury the question of guilt or innocence before submitting the issue of punishment). We cannot conclude on this record that the trial court abused its discretion. *See Thompson*, 426 S.W.3d at 211.

Consequently, we decide against Dickerson on his fourth issue.

## V. CONCLUSION

We decide against Dickerson on his four issues and affirm the trial court's judgment.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

121670F.U05

–13–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

QUIDALE D. DICKERSON, Appellant

No. 05-12-01670-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 5, Dallas County, Texas
Trial Court Cause Nos. F-1159093-L.
Opinion delivered by Justice Lang.   Justices Myers and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 18th day of August, 2014.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

QUIDALE D. DICKERSON, Appellant

No. 05-12-01672-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 5, Dallas County, Texas
Trial Court Cause Nos. F-1159094-L.
Opinion delivered by Justice Lang. Justices Myers and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 18th day of August, 2014.