PD-0734-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/31/2015 1:40:46 PM
Accepted 7/31/2015 3:31:38 PM
ABEL ACOSTA
CLERK

*Oral argument requested*

**PD-0734-15**

### IN THE TEXAS COURT OF CRIMINAL APPEALS

---

# DARYL DOTSON
*APPELLANT*

vs.

# THE STATE OF TEXAS
*APPELLEE*

---

FROM THE THIRTEENTH COURT OF APPEALS
CAUSE NO. 13-13-00387-CR

APPEAL FROM CRIMINAL DISTRICT COURT NO. 2 OF
DALLAS COUNTY, TEXAS, CAUSE NO. F11-63228-I

---

# APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---

GARY UDASHEN
State Bar No. 20369590
gau@sualaw.com

BRETT ORDIWAY
State Bar No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs, Suite 250
Dallas, Texas 75201
214-468-8100 (office)
214-468-8104 (fax)

*Counsel for Appellant*

FILED IN
COURT OF CRIMINAL APPEALS

July 31, 2015

ABEL ACOSTA, CLERK

## Ground for Review

Whether the State may render improperly excluded defense cross-examination harmless merely by briefly touching on the subject matter during direct examination.

# Table of Contents

**Page**

GROUND FOR REVIEW ......................................................................... 1

    Whether the State may render improperly excluded defense
    cross-examination harmless merely by briefly touching on
    the subject matter during direct examination.

TABLE OF CONTENTS ........................................................................ 2

INDEX OF AUTHORITIES ................................................................... 3

IDENTITY OF PARTIES AND COUNSEL ........................................... 5

STATEMENT REGARDING ORAL ARGUMENT ................................ 7

STATEMENT OF THE CASE AND PROCEDURAL HISTORY ....... 8-10

ARGUMENT ................................................................................... 11-23

PRAYER ........................................................................................... 23

CERTIFICATE OF SERVICE ............................................................. 24

CERTIFICATE OF COMPLIANCE .................................................... 25

# Index of Authorities

**Cases**                                                                               **Page**

*Alford v. United States*, 282 U.S. 687 (1931) .................................. 13, 17

*Callins v. State*, 780 S.W.2d 176 (Tex. Crim. App. 1986) ...................... 12

*Carmona v. State*, 698 S.W.2d 100 (Tex. Crim. App. 1985) ................... 12

*Carpenter v. State*, 979 S.W.2d 633
(Tex. Crim. App. 1998) .......................................... 12, 16, 17, 18, 19, 20

*Carroll v. State*, 916 S.W.2d 494 (Tex. Crim. App. 1996) ................. 12, 16

*Davis v. Alaska*, 415 U.S. 308 (1974) ...................................................... 12

*Dotson v. State*, No. 13-13-00387-CR,
2015 WL 3522993 (Tex. App.—Corpus Christi 2015) ............... 10, 13, 14

*Evans v. State*, 519 S.W.2d 868 (Tex. Crim. App. 1975) ........................ 12

*Gilmore v. State*, 323 S.W.3d 250
(Tex. App.—Texarkana 2010, pet. ref'd) ................................................ 18

*Harris v. State*, 642 S.W.2d 471 (Tex. Crim. App. 1982) ....................... 12

*Irby v. State*, 327 S.W.3d 138, 149 (Tex. Crim. App. 2010) . 17, 18, 19, 20

*Leday v. State*, 983 S.W.2d 713 (Tex. Crim. App. 1998) ........................ 14

*Lewis v. State*, 815 S.W.2d 560 (Tex. Crim. App. 1991) ......................... 12

*London v. State*, 739 S.W.2d 842 (Tex. Crim. App. 1987) ...................... 16

*McDaniel v. State*, 3 S.W.3d 176
(Tex. App.—Fort Worth 1999, pet. ref'd) ............................................... 22

*Miller v. State*, 741 S.W.2d 382 (Tex. Crim. App. 1987)........................12

*Randle v. State*, 565 S.W.2d 927 (Tex. Crim. App. 1978).......................12

*Shaw v. State*, 420 S.W.3d 857
(Tex. App.—Houston [14th Dist.] 2014)................................................18

*Shelby v. State*, 819 S.W.2d 544 (Tex. Crim. App. 1991).................. 15, 22

*Woods v. Texas*, 152 S.W.3d 105 (Tex. Crim. App. 2004) .......................20

## Codes and Rules

TEX. R. APP. P. 44.2(a) ...........................................................................15

TEX. R. APP. P. 44.2(b) ...........................................................................13

TEX. GOV'T CODE § 73.001........................................................................10

4

## Identity of Parties and Counsel

For Appellant Daryl Dotson:

    LISA FOX
        *Trial counsel of record*
    6565 N. MacArthur Blvd.
    Suite 225
    Irving, Texas 75039

    NICOLE HINES-GLOVER
        *Trial counsel of record*
    14785 Preston Road
    Suite 550
    Dallas, Texas 75254

    LYSETTE RIOS
        *Trial counsel of record*
    14785 Preston Road
    Suite 550
    Dallas, Texas 75254

    GARY UDASHEN
    BRETT ORDIWAY
        *Appellate counsel of record*
    SORRELS, UDASHEN & ANTON
    2311 Cedar Springs
    Suite 250
    Dallas, TX 75201
    214-468-8100
    214-468-8104 (fax)
    gau@sualaw.com
    bordiway@sualaw.com

For Appellee the State of Texas:

    JUSTIN MCCANTS

AUDRA RILEY
 *Trial counsel of record*
DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE
133 Riverfront Boulevard
Dallas, Texas 75207

MARTIN L. PETERSON
KAREN R. WISE
 *Appellate counsel of record*
DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE
133 Riverfront Boulevard
Dallas, Texas 75207

## Statement Regarding Oral Argument

Dotson believes oral argument would be helpful to this Court's understanding of the errors by the courts below.

## Statement of the Case and Procedural History

A group of young men sold drugs out of a "trap house," among them Dotson and Nate Scott. (RR5: 152-156, 159, 212-213). One morning, they decided to kill and then rob another drug dealer, so they called and asked him to deliver them MDMA pills. (RR5: 33, 165, 221). He agreed, but arrived with an unannounced second man. (RR5: 223-225). Despite the group's initial surprise, they determined to kill them both. (RR5: 223-224).

When the two men entered the trap house, Scott fired the initial shots with a handgun. They were not fatal wounds. (RR5: 226-229). Multiple witnesses testified to seeing Dotson handling an AK-47 assault rifle, and to boasting after the fact that he had shot and killed the victims after Scott failed, but only one witness testified that he actually saw Dotson use it to then shoot and kill the victims. (RR5: 227-229). That witness was both an accomplice in this case and was awaiting trial on other, unrelated charges. (RR5: 208; RR9: 36).

After the shooting the group put the victims' bodies in their car's trunk, drove to a remote area, and then set it on fire. (RR5: 176-177, 185). Police soon found the vehicle, though, in turn leading them to a woman

8

who had also been present at the trap house during the shooting. (RR4: 56-57; RR5: 191; RR6: 101). She, in turn, led them to Dotson and Scott. (RR6: 186). By this time, Dotson had traveled to Houston, but he was arrested upon his return to Dallas. (RR7: 120-121; 184-185). He was cooperative, and admitted nothing. (RR8: 41).

Dotson was indicted for capital murder on March 8, 2012. (CR: 12); *see* TEX. PEN. CODE § 19.03. The indictment alleged that he intentionally caused Steven Govan's death in the course of committing, or attempting to commit, a robbery. TEX. PEN. CODE § 19.03(a)(2). Approximately one year later, on March 29, 2013, the State amended the indictment to include a second victim, Jonathan Williams. (CR: 59).

Dotson pleaded not guilty and his jury trial commenced on May 13, 2013, with voir dire. (RR1: 4). At the end of that day, however, the trial judge dismissed the entire panel. (CR: 9). There is no record of any challenges for cause, or any indication that the jury panel was discharged. The record simply ends. (RR3: 99). The docket sheet indicates, though, that the original panel "busted." (CR: 9). Accordingly, a second day of voir dire was conducted on May 14, and the guilt phase of trial followed from May 15 through May 22. (RR1: 6-11). The jury found Dotson guilty on

May 23, 2013, and he was automatically sentenced to imprisonment for life. (RR12: 9-10). He filed notice of appeal that day. (CR: 153).

The appeal was transferred from the Fifth Court of Appeals to the Thirteenth Court of Appeals pursuant to an order issued by the Texas Supreme Court. *See Dotson v. State*, No. 13-13-00387-CR, 2015 WL 3522993, *1 n. 1 (Tex. App.—Corpus Christi 2015) (citing TEX. GOV'T CODE § 73.001). Before that court, Dotson raised three grounds of error. The court overruled each, though, and affirmed his conviction in an opinion released June 4, 2015. *Id.* No motion for rehearing was filed.

## Argument

> The State may not render improperly excluded defense cross-examination harmless merely by briefly touching on the subject matter during direct examination.

◆   ◆   ◆

## I.   **The trial court's error**

Decoreum Clater claimed that Nate Scott instructed Dotson to shoot the complainants, and that he watched as Dotson did just that. (RR5: 228-229). Clater was the State's only eyewitness to Dotson's alleged firing of a weapon.

The defense reserved its cross-examination and recalled Clater during its case-in-chief. (RR6: 7). At that time, Dotson's counsel attempted to impeach Clater by showing that he was motivated to testify by his pending trial in an unrelated Rockwall County case, and that Clater therefore lacked credibility. (RR9: 47). The State had only briefly covered the subject in its direct examination, asking Clater what he had been charged with and then soliciting, and receiving, confirmation from Clater that the prosecutor in Dotson's case had "nothing to do with that crime." (RR5: 207-208). The State nonetheless successfully objected to Dotson's

11

attempted impeachment as irrelevant, and the court directed Dotson to "move on." (RR9: 47).

## II. Dotson's argument on appeal

Although the extent of cross-examination is subject to the sound discretion of the trial court, it abuses that discretion when it prevents appropriate cross-examination. *Carroll v. State*, 916 S.W.2d 494, 499 (Tex. Crim. App. 1996). And exposing a witness's motivation to testify for or against the accused or the State is a proper and important purpose of cross-examination. *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998). Indeed, there exists a long line of federal and state authority holding a pending criminal charge is an appropriate area of cross-examination. *Carroll*, 916 S.W.2d at 499 (citing *Davis v. Alaska*, 415 U.S. 308, 316–317 (1974); *Callins v. State*, 780 S.W.2d 176, 196 (Tex. Crim. App. 1986); *Carmona v. State*, 698 S.W.2d 100, 102–103 (Tex. Crim. App. 1985); *Harris v. State*, 642 S.W.2d 471, 476 (Tex. Crim. App. 1982) (citing *Randle v. State*, 565 S.W.2d 927 (Tex. Crim. App. 1978)); *Evans v. State*, 519 S.W.2d 868 (Tex. Crim. App. 1975); *Lewis v. State*, 815 S.W.2d 560, 565 (Tex. Crim. App. 1991); and, *Miller v. State*, 741 S.W.2d 382, 389 (Tex. Crim. App. 1987). This is for the obvious reason that a witness in

that circumstance may give testimony "under a promise or expectation of immunity, or under the coercive effect of his detention by officers… conducting the present prosecution." *Alford v. United States*, 282 U.S. 687, 693 (1931).

Accordingly, in Dotson's first ground of error on appeal to the Thirteenth Court of Appeals, he complained that the trial court abused its discretion in prohibiting him from impeaching the credibility of the State's sole eyewitness with his pending criminal charges. (Ap. Br. at 3-12). Clater's own testimony established a causal connection and logical relationship between the pending charges and his vulnerable relationship or potential bias or prejudice for the State. Moreover, the error affected Dotson's substantial rights because, if Clater's credibility had been fully diminished, the State would have been entirely without any eyewitnesses to the crime. *See* Tex. R. App. P. 44.2(b).

The court of appeals did not address whether the trial court abused its discretion. But it overruled the issue nonetheless, holding "that Dotson has not shown that any error would be reversible." *Dotson v. State*, No. 13-13-00387-CR, 2015 WL 3522993, *2 (Tex. App.—Corpus Christi 2015). And for only one reason: because "the jury was already made

13

aware, through Clater's direct testimony during the State's case-in-chief, that Clater was subject to a pending burglary prosecution."[1] *Id.* (citing *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (holding that "overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling")).

III. **The excluded testimony was not cumulative, and even if it was, that does not necessarily render its exclusion harm-less**

**a. The court of appeals's incomplete analysis**

As an initial matter, Dotson urges this Court that the relevance of the pending charge had hardly been exhausted. As explained in Dotson's opening brief on appeal, but ignored by the court of appeals in its opinion, "[t]he State only briefly covered the subject in its direct examination, ask-

---

[1] The court also took issue with Dotson's "intimat[ion] that Clater gave a statement to police in connection with the Rockwall County case that was inconsistent with his trial testimony here." *Dotson*, 2015 WL 3522993 at *2. But Dotson pointed to Clater's changing statement as evidence he was in fact in a vulnerable relationship with the state, not that the trial court's erroneous determination otherwise was harmful. And, again, the court of appeals did not dispute that Clater was in a vulnerable relationship with the state.

14

ing Clater what he had been charged with and then soliciting, and receiving, confirmation from Clater that the prosecutor in Dotson's case had 'nothing to do with that crime.'" (Ap. Br. at 4) (citing RR5: 207-208)).

More importantly, even if the excluded testimony was cumulative, that is not dispositive. This Court has indeed held that a constitutional harmless error analysis applies when a trial court improperly limits a defendant's cross-examination of a witness for the purpose of exposing the witness's bias. *Shelby v. State*, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991); *see also* TEX. R. APP. P. 44.2(a). But under this analysis, an appellate court must determine whether the error was harmless beyond a reasonable doubt in light of several factors: (1) the importance of the witness's testimony in the prosecution's case, (2) whether the testimony was cumulative, (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, (4) the extent of cross examination otherwise permitted, and (5) the overall strength of the prosecution's case. *Shelby*, 819 S.W.2d at 547. Whether Clater's testimony was cumulative, then, is only 1/5th of the inquiry—it is hardly dispositive.

15

At the very least, then, this Court should grant this petition so that it may reverse and remand this case to the court of appeals with instruction to conduct the correct harm analysis and, if it finds the testimony's exclusion affected Dotson's substantial rights, to consider whether it was erroneous. But because, under the correct analysis, it is plain that the testimony's exclusion affected Dotson's substantial rights, and that the trial court abused its discretion, in the interests of judicial economy this Court should simply reverse the judgments of the court of appeals and trial court and remand this case for a new trial.

### b. The trial court plainly erred

Although the extent of cross-examination is subject to the sound discretion of the trial court, it abuses that discretion when it prevents appropriate cross-examination. *Carroll v. State*, 916 S.W.2d 494, 499 (Tex. Crim. App. 1996). And, as noted above, exposing a witness's motivation to testify for or against the accused or the State is a proper and important purpose of cross-examination. *Carpenter*, 979 S.W.2d at 634. Parties are allowed great latitude to show "any fact which would or might tend to establish ill feeling, bias, motive and animus on the part of the witness." *London v. State*, 739 S.W.2d 842, 846 (Tex. Crim. App. 1987).

Seemingly, then, Clater's pending charges in Rockwall County would be precisely that basis on which Dotson was entitled to cross-examine Clater.

Nonetheless, Dotson recognizes that the trial court has some discretion. *Carpenter*, 979 S.W.2d at 634. To that end, in the context of cross-examining a witness subject to pending charges, for evidence of the pending charges to be admissible the proponent must establish some causal connection or logical relationship between the pending charges and the witness's vulnerable relationship or potential bias or prejudice for the State. *Irby v. State*, 327 S.W.138, 149 (Tex .Crim. App. 2010) (quoting *Alford v. United States*, 282 U.S. 687, 693 (1931)). In *Carpenter*, for example, the this Court did not follow the general rule because the pending charges were in federal court and the witness was testifying in state court. 979 S.W.2d at 634-635. Additionally, the federal charges arose after the witness had provided a statement to police. *Id.* at 635. Thus, absent additional facts of some potential "deal" between state and federal authorities, there was no logical connection between the federal pending charges and the witness's possible motive to "curry favor" with state authorities. *Id.* The pending federal charge was therefore irrelevant as a

possible source of bias. *Id.* Similarly, the Court in *Irby* held that defend-ants do not have an automatic right to cross-examine victim about his status as a probationer, and that, in that case, where the witness had already passed the information on to several other people prior to involv-ing the police or creating any link between his testimony and potential bias, the defendant had not shown the required logical connection. 327 S.W.3d at 152-154.

In *Carpenter* and *Irby*'s wake, Texas's courts of appeals have not hesitated to invoke their holding in affirming trial courts' prohibition of cross-examination. *See, e.g., Shaw v. State*, 420 S.W.3d 857, 861 (Tex. App.—Houston [14th Dist.] 2014) (irrelevant that assistant M.E. had been placed on pretrial diversion for an offense that she was charged with months after she had performed the autopsy on the decedent); *Gilmore v. State*, 323 S.W.3d 250, 266 (Tex. App.—Texarkana 2010, pet. ref'd) (the mere existence of federal charges fails to establish a nexus or causal con-nection indicating bias). Dotson's case is immediately distinguishable from those cases, though. As Judge Mansfield explained in his *Carpenter* concurrence, the situation in which the same prosecutorial authority, or "another nonfederal prosecutorial authority in Texas," is prosecuting the

testifying witness is entirely different from that in which the federal government brings charges. *See id.* at 635 (Mansfield, J., concurring). In that latter instance, there is no "causal connection" between the charges against the witness and his testimony at trial because the witness was in a "vulnerable relationship" with the federal government, not the State. "The federal government stood to gain nothing from, and [the witness] in turn stood to gain nothing from the federal government for, his testimony for the State." *Irby*, 327 S.W.3d at 161 (Holcomb, J., dissenting).

In Dotson's case, on the other hand, the State of Texas was prosecuting both Dotson and Clater. Clater was thus in a "vulnerable relationship" with the same party that was prosecuting Dotson, creating the undeniable incentive to comply with its wishes.[2] And, in fact, Clater conceded that, after giving two previous statements in this case, and lying

---

[2] This Court has previously recognized that, in certain instances, a "logical relationship" stems from the very fact that the witness is testifying for the same entity, the State, which has indicted him:

> The proponent of evidence to show bias must show that the evidence is relevant. The proponent does this by demonstrating that a nexus, or logical connection, exists between the witness's testimony and the witness's potential motive to testify in favor of the other party. *We have found a nexus when a witness has been indicted* or is serving a period of community supervision. In such cases, the witness is placed in a vulnerable position and may have a motive to testify in favor of the State.

in his initial police interview, his testimony at trial was now altogether different. (RR8: 169-182; RR9: 11, 19). He attributed this to his "miraculous memory" that improves over time. (RR8: 179). Furthermore, he admitted that he was obeying the prosecution's directive "a couple of days" before trial in avoiding referring to the victims by their names. (RR8: 169-182; RR9: 11, 19). Additionally, Clater's "evolving" testimony distinguishes this case from those in which the witness's testimony was consistent with a statement he gave before his motive to fabricate arose. *Compare Carpenter*, 979 S.W.2d at 635; *Irby*, 327 S.W.3d at 153 ("The timing of this purportedly false allegation was crucial. If [the witness] had a motive to make up the accusatory story, he had that motive at the time that he first told others about it."). Accordingly, Dotson urges this Court that there was a clear causal connection or logical relationship between Clater's pending charges and his vulnerable relationship or potential bias or prejudice for the State. *Irby*, 327 S.W.3d at 149.

---

*Woods v. Texas*, 152 S.W.3d 105, 111 (Tex. Crim. App. 2004) (emphasis added) (citations omitted).

20

### c. The trial court's error affected Dotson's substantial rights

In this case, if Clater's credibility had been fully diminished, the State would have been entirely without any eyewitnesses to the crime. Though, concededly, it still had witnesses who testified that Dotson admitted shooting the victims, each of them were accomplices – either to the murder or after the fact. Jordan Arrango and Jesse Houston were each at the "trap house" the night before the murders, and they picked up Dotson and Scott after the victims' car was set on fire. (RR6: 10, 16-21, 48, 53-54, 60). Furthermore, at the time of trial Jesse Houston was serving a 17-year sentence for burglary of a habitation. (RR6: 44-45). And Jamie Dunn and Talisha Clay each housed Dotson in Houston, Texas, before he returned to Dallas. (RR7: 120-121, 123-124, 159-160). The only other witness connecting Dotson to the shooting was Benita Davis, but she only observed Dotson with a gun shortly *before* she heard shots. (RR5: 171-173). She did not see who fired them. (RR5: 172).

Dotson therefore urges this Court that, as to the first *Shelby* factor, Clater's testimony was extremely important to the State. In fact, he was its "star witness." And, as discussed above, Clater's most significant tes-

timony – the most significant of the trial, really – was not at all cumulative, and was corroborated only by unreliable witnesses. For this same reason, the overall strength of the prosecution's case, absent Clater's testimony, was deceptively slight. The only *Shelby* factor, then, that at all might weigh against Dotson is his lengthy examination of Clater on other bases during the defense's case-in-chief, but that, alone, does not permit the conclusion that the trial court's error was harmless beyond a reasonable doubt. *See McDaniel v. State*, 3 S.W.3d 176, 181-182 (Tex. App.—Fort Worth 1999, pet. ref'd) (trial court reversibly erred in preventing impeaching witness where State's case was relatively strong, but relied heavily on that witness's testimony, his testimony was not cumulative, and was not specifically contradicted).

In this case, Dotson sought to cross-examine the State's sole eyewitness as to any reason for which he might have fabricated his testimony to assist the State. He was prohibited from doing so, however, on the basis that such an inquiry was "irrelevant." Dotson respectfully requests this Court to recognize that nothing could be further from the truth, and thereby hold that Dotson was denied his constitutional right

of confrontation, it was harmful, and that, accordingly, this case must be reversed and remanded for a new trial.

## Prayer

Because the court of appeals ignored the great majority of the harm analysis in this case, if nothing else this Court should grant this petition so that it may reverse and remand this case to the court of appeals with instruction to conduct the correct harm analysis and, if it finds the testimony's exclusion affected Dotson's substantial rights, to consider whether it was erroneous.

But for all those reasons urged in Dotson's briefing before the court of appeals, and now summarized in this petition, Dotson urges this Court that, because, under the correct analysis, it is plain that the trial court's error affected his substantial rights, and that the trial court abused its discretion, in the interests of judicial economy this Court should simply reverse the judgments of the court of appeals and trial court and remand this case for a new trial.

Respectfully submitted,


_/s/ Gary A. Udashen_
Gary A. Udashen
State Bar No. 20369590
gau@sualaw.com


_/s/ Brett Ordiway_
BRETT ORDIWAY
Bar Card No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road Suite 250
Dallas, Texas 75201
(214)-468-8100 (office)
(214)-468-8104 (fax)

*Attorneys for Appellant*


## Certificate of Service

I, the undersigned, hereby certify that a true and correct copy of the foregoing Petition for Discretionary Review was electronically served to the Dallas County District Attorney's Office and State Prosecuting Attorney on July 31, 2015.


_/s/ Gary A. Udashen_
Gary A. Udashen

## <u>Certificate of Compliance</u>

Pursuant to TEX. R. APP. P. 9.4(i)(3), undersigned counsel certifies that this brief complies with:

1. the type-volume limitation of TEX. R. APP. P. 9.4(i)(2)(D) because this petition contains 2,618 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2. the typeface requirements of TEX. R. APP. P. 9.4(e) and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 14-point Century Schoolbook.

/s/ Gary A. Udashen
Gary A. Udashen

# APPENDIX



NUMBER 13-13-00387-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DARYL DOTSON,                                                              Appellant,

v.

THE STATE OF TEXAS,                                                       Appellee.

On appeal from the Criminal District Court 2
of Dallas County, Texas.

# MEMORANDUM OPINION

## Before Chief Justice Valdez and Justices Garza and Benavides
## Memorandum Opinion by Justice Garza

Appellant Daryl Dotson was convicted of capital murder and sentenced to life imprisonment without parole. *See* TEX. PENAL CODE ANN. § 19.03 (West, Westlaw through 2013 3d C.S.). On appeal, he argues the trial court erred by: (1) prohibiting his trial counsel from inquiring as to a witness's pending criminal charge; (2) denying his motion for mistrial "after the attorney-client privilege was violated"; and (3) instructing the court

reporter to "go off the record" prior to dismissing the original venire panel. We affirm.[1]

## I. BACKGROUND

According to the testimony of several witnesses, Dotson and Nate Scott sold illegal drugs out of a "trap house" in Dallas.[2] On December 18, 2011, Dotson, Scott, and their associate Debanair Wynn were overheard discussing a plan to rob and kill another drug dealer, Steven Govan. The men called Govan and asked him to deliver MDMA[3] pills to the trap house. Govan later arrived at the house with another man, Jonathan Williams, who was unknown to Dotson and Scott. When Scott saw that Govan had brought an unknown person to the house, he decided that both of them should be killled. Dotson and Scott were overheard discussing where in the house the killings should take place. When Govan and Williams entered the house, Scott fired his handgun at the men, wounding them. Scott then told Dotson the men were still alive, so Dotson shot each of them once with an assault rifle, killing them. Dotson, Scott, and Wynn placed the bodies of Govan and Williams into the trunk of Govan's car, drove the car to a remote area, and set the car on fire.

A Dallas County jury convicted Dotson of capital murder and, because the State did not seek the death penalty, a mandatory sentence of life imprisonment without parole was imposed. *See id.* § 12.31(a)(2) (West, Westlaw through 2013 3d C.S.). This appeal followed.

---

[1] This appeal was transferred from the Fifth Court of Appeals pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

[2] A "trap house" has been defined as "a crack house, or the surroundings in which a drug dealer . . . would use to make their profit." URBAN DICTIONARY, http://www.urbandictionary.com/define.php?term=trap+house (last visited June 1, 2015).

[3] Also known as "molly" or "ecstasy." *Drug Facts*, NAT'L INST. ON DRUG ABUSE, http://www.drugabuse.gov/publications/drugfacts/mdma-ecstasy-or-molly (last visited June 1, 2015).

2

## II. Discussion

### A. Impeachment Questions

By his first issue, Dotson argues that the trial court erred in prohibiting his trial counsel from asking certain questions of witness Decoreum Clater. We review a trial court's decision to disallow evidence for abuse of discretion, and will uphold the ruling unless it lies outside the zone of reasonable disagreement. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012).

Clater, who stayed at the trap house during the weekend of the killings, was the only witness to testify directly that he observed Dotson shoot the two victims. He also testified, without objection, that he had been charged with and was awaiting trial for a burglary offense in Rockwall County. When the prosecutor asked Clater, "I have nothing to do with that crime that you've been charged with in Rockwall; is that right?," Clater replied, "No, sir."

Defense counsel reserved cross-examination of Clater and later recalled him as part of Dotson's case-in-chief. After a discussion regarding a statement Clater made to police during the investigation of the murders of Govan and Williams, the following colloquy occurred:

| | |
|---|---|
| Q. [Defense counsel] | Okay. Now, let's go back to this Rockwall County case that you have. Did you give a statement in that case? |
| A. [Clater] | No. |
| Q. | You hadn't talked to anybody in that case? |
| A. | No. |
| Q. | No—no—no lawyers, no detectives, no anybody? |
| A. | No. |

| | |
|---|---|
| Q. | You didn't happen to tell who was there— |
| A. | No. |
| [Prosecutor]: | Your Honor, I'm going to object to relevance at this point. |
| THE COURT: | Sustained. |
| [Defense counsel]: | Your Honor, it goes to his credibility— |
| THE COURT: | I sustained the objection. |
| [Defense counsel]: | —his motive for testifying. |
| THE COURT: | I sustained the objection. |
| [Defense counsel]: | Credibility of a witness on the stand is an issue— |
| THE COURT: | I sustained the objection. |
| [Defense counsel]: | —every case. |
| THE COURT: | Let's move on. |

Dotson argues that the trial court erred in sustaining the prosecutor's objection because his counsel's question was relevant as to Clater's motivation to testify in this case. *See* TEX. R. EVID. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."); *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998) ("Exposing a witness'[s] motivation to testify for or against the accused or the State is a proper and important purpose of cross-examination. Parties are allowed great latitude to show any fact which would or might tend to establish ill feeling, bias, motive and animus on the part of the witness." (internal quotations omitted)).

Generally, when a party alleges evidence has been erroneously excluded, the issue is preserved for appellate review only if the party informed the trial court of the substance of the excluded evidence "by an offer of proof, unless the substance was

4

apparent from the context." TEX. R. EVID. 103(a)(2). However, when the issue is whether defense counsel was denied the opportunity to question a witness "about a certain general subject that might affect the witness's credibility," to preserve the error, the appellant "must merely establish what general subject matter he desired to examine the witness about during his cross-examination and, if challenged, show on the record why such should be admitted into evidence." *Virts v. State*, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987). Here, during a discussion of Clater's unrelated burglary charge, the prosecutor lodged a relevance objection to defense counsel's truncated question, "You didn't happen to tell who was there . . . ." The trial court sustained the objection. Defense counsel asserted that the questions were relevant as to Clater's "credibility" and "motive for testifying," but did not elaborate further as to why Clater's answer to the truncated question in particular would be admissible.

Assuming that the issue has been preserved, we nevertheless find that Dotson has not shown that any error would be reversible. Dotson contends that, because Clater was being prosecuted by the same party that was prosecuting Dotson—i.e., the State— Clater was in a "vulnerable position" and may have had a motive to testify in favor of the State. *See Woods v. State*, 152 S.W.3d 105, 111 (Tex. Crim. App. 2004) ("The proponent of evidence to show bias must show that the evidence is relevant. The proponent does this by demonstrating that a nexus, or logical connection, exists between the witness's testimony and the witness's potential motive to testify in favor of the other party. We have found a nexus when a witness has been indicted . . . . In such cases, the witness is placed in a vulnerable position and may have a motive to testify in favor of the State.") (footnotes omitted). But the jury was already made aware, through Clater's direct

5

testimony during the State's case-in-chief, that Clater was subject to a pending burglary prosecution.[4] Moreover, though Dotson intimates that Clater gave a statement to police in connection with the Rockwall County case that was inconsistent with his trial testimony here, Clater had already testified repeatedly without objection that he gave no statement at all in connection with that case. For the foregoing reasons, any error in excluding additional evidence of Clater's pending prosecution would have been harmless. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (holding that "overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling"); *see also* TEX. R. APP. P. 44.2.

Dotson's first issue is overruled.

## B. Motion for Mistrial

By his second issue, Dotson contends that the trial court erred by denying his motion for mistrial after a microphone was found to have been installed on the courtroom table at which he and his attorneys sat during trial. He claims that the microphone captured audio recordings of conversations between him and his counsel regarding trial strategy, thereby violating the attorney-client privilege and causing incurable error.

### 1. Applicable Law and Standard of Review

A mistrial is an appropriate remedy in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). A mistrial halts trial proceedings when error is so prejudicial that expenditure

---

[4] Although Dotson's attorneys did not mention Clater's pending burglary charge in their closing arguments when they discussed the issue of Clater's credibility, there was nothing preventing them from doing so since the pending charge was already part of the evidence.

6

of further time and expense would be wasteful and futile. *Id.* Whether an error requires a mistrial must be determined by the particular facts of the case. *Id.* A trial court's denial of a mistrial is reviewed for an abuse of discretion. *Id.* We view the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Id.* The ruling must be upheld if it was within the zone of reasonable disagreement. *Id.*

A person represented by an attorney "has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to facilitate the rendition of professional legal services" to the person. TEX. R. EVID. 503(b)(1). Moreover, in a criminal case, "a client has a privilege to prevent a lawyer or lawyer's representative from disclosing any other fact that came to the knowledge of the lawyer or the lawyer's representative by reason of the attorney-client relationship." TEX. R. EVID. 503(b)(2).

### 2. Facts

At a lunch break on the third day of trial, defense counsel discovered that a microphone had been placed on her table by crew members of *After the First 48*, a television documentary series featuring homicide prosecutions. Outside the presence of the jury, defense counsel requested a hearing "to determine how we can dispose of the audio evidence that was collected during the course of this trial without the permission of counsel nor of the defendant in this case." Counsel also requested "an order that they turn [the recordings] over to us and we have an opportunity to review what has been recorded thus far." The trial court initially denied the request after receiving unsworn confirmation from a production crew member that the recordings had not been "shared"

7

with anyone. After the day's testimony concluded, the trial court granted a hearing on the matter.

At the hearing, Thomas Treml testified that he is a freelance video production associate and was "primarily responsible for the logistical aspects of the production" of the show. He agreed that, according to the directives given to him by his associate producer, he was supposed to obtain "releases from the employees of the court, the bailiff, the court reporter, the judge, generally anyone [that] speaks on camera . . . ." He stated that he obtained signed releases from the bailiff, the court reporter, the judge, and the prosecutors; however, he did not obtain a release from Dotson or his counsel. He also did not advise Dotson or his counsel that microphones were being placed at their courtroom table, though he "assumed that folks involved were aware of their presence" because "[p]eople were in the . . . environment when we were placing the devices and so on." He did advise the prosecutors that they were being recorded, and "the prosecution asked us not to place a microphone on their table."

Treml testified that there were two cameras in the courtroom during Dotson's trial and that each camera had two audio inputs fed by microphones. Treml's assistant had put the microphones in place around the courtroom and monitored the audio as it was being recorded. Treml denied that "the audio file in this case has been transmitted anywhere." He explained the audio recordings made during the case are "stored on cards in the camera" and are then downloaded onto a hard drive. According to Treml, "all the recording, all the audio, all the video currently exists on a hard drive that we have with us."

8

After the hearing, defense counsel reiterated her request for an order requiring the production crew to turn over "all recordings that have been conducted in the course of this proceeding" to the defense. Counsel further moved for mistrial on grounds that the attorney-client privilege, as well as Dotson's Fifth Amendment right against self-incrimination, were violated. Counsel additionally pointed out that, though the prosecution was advised of the situation and asked to not be recorded, "defense counsel was not provided that same opportunity." In response, the prosecutor suggested that the trial court "not allow [the recordings] to be used in any way" and order them "destroyed." The trial court denied the motion for mistrial but ordered the crew to "turn over that portion that came out of [defense counsel's] microphone to [defense counsel]."

Subsequently, the trial court reconsidered its ruling upon an assertion by the prosecutor that "by releasing the entire transcript of the trial, then that's basically unfair prejudice as far as them having an entire transcript of the actual trial itself." The trial court agreed, withdrew its earlier ruling, and ordered that the recordings be turned over to the court reporter and sealed "until the trial is over with."

Defense counsel later subpoenaed all recordings made during trial, but the trial court granted the production company's motion to quash the subpoena and the recordings were returned to the production company.

### 3. Analysis

Dotson contends that the attorney-client privilege "was clearly violated by the production assistant's 'monitoring' of the audio from the microphone at defense counsel's table." He further asserts that "the trial court plainly erred in actually turning over to [the production crew] the recordings of defense counsel and Dotson," presumably referring to

the trial court's decision to quash the subpoena for the recordings issued by defense counsel.

Assuming, but not deciding, that the creation and disclosure of the recordings violated Dotson's attorney-client privilege, we nevertheless find that Dotson has failed to show reversible error. Dotson urges that "the attorney-client privilege is the sort of fundamental protection that, when violated, is among the narrow class of highly prejudicial and incurable errors" for which a mistrial is the appropriate remedy. *See Ocon*, 284 S.W.3d at 884. However, he has not cited any authority, and we find none, establishing that a mistrial is necessarily appropriate when a third party intrudes upon a defendant's communications with his attorney. The State cites *United States v. Irwin*, in which the federal Ninth Circuit Court of Appeals held:

> [M]ere government intrusion into the attorney-client relationship, although not condoned by the court, is not of itself violative of the Sixth Amendment right to counsel. Rather, the right is only violated when the intrusion substantially prejudices the defendant. Prejudice can manifest itself in several ways. It results when evidence gained through the interference is used against the defendant at trial. It also can result from the prosecution's use of confidential information pertaining to the defense plans and strategy, from government influence which destroys the defendant's confidence in his attorney, and from other actions designed to give the prosecution an unfair advantage at trial.

612 F.2d 1182, 1186–87 (9th Cir. 1980) (footnotes omitted); *see Ovalle v. State*, No. 13-12-00272-CR, 2014 WL 69545, at *6 (Tex. App.—Corpus Christi Jan. 9, 2014, pet. ref'd) (mem. op., not designated for publication) (noting, where a state agent allegedly interfered with attorney-client communications, that "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate"). Dotson does not claim that his Sixth Amendment right to counsel was violated by the creation and disclosure of the recordings, but we believe the principle elucidated in *Irwin* is

applicable to his complaint at trial, which was based on the Fifth Amendment, and his complaint on appeal, which is based on Rule of Evidence 503. Even assuming the acts of recording and disclosure could be attributed to the prosecution as in *Irwin*, it is undisputed that the content of the recordings made during Dotson's trial was never disclosed to the jury, the trial court, the prosecution, or anyone else officially involved in the case. The prosecution never gained any advantage from the creation or disclosure of the recordings. *See Irwin*, 612 F.2d 1187.

It is disturbing that the *After the First 48* crew appears to have violated its own policy by failing to seek consent from defense counsel to place microphones at the defense's courtroom table, especially in light of the fact that the crew asked the prosecution for permission to place microphones at their table but were denied.[5] Nevertheless, it is not unconstitutional for trial proceedings to be recorded without the consent of the defendant. *See Chandler v. Florida*, 449 U.S. 560, 583 (1981) (holding that the Constitution "does not prohibit a state from experimenting with" a program under which trials may be televised without the defendant's consent); *see also Hendershot v. State*, No. 13-10-00452-CR, 2012 WL 3242018, at *3 (Tex. App.—Corpus Christi Aug. 9, 2012, pet. ref'd) (mem. op., not designated for publication) (finding no error in trial court's decision, over appellant's objection, to permit cameras in the courtroom during trial). In any event, because Dotson has not shown that he suffered any prejudice whatsoever from the creation or disclosure of the recordings, we cannot conclude that the trial court

---

[5] In its brief, the State argues: "All that the record seems to show is that a third party, acting without the knowledge of not only the defendant but also the court and the State's agents, possibly engaged in improper or illegal conduct." We do not pass judgment on the legality of the crew's actions; but we note that, according to the record, the prosecution and the trial court were made fully aware of their plans to place microphones and cameras in the courtroom to record trial proceedings.

abused its discretion in denying his motion for mistrial. Dotson's second issue is overruled.

## C.    Dismissal of Venire

By his third issue, Dotson argues that the trial court erred "in instructing the court reporter to 'go off the record' before he inexplicably dismissed the original jury panel."

As Dotson correctly notes, the record in this case contains two separate voir dire examinations. The first examination, which took place on May 13, 2013, concludes with the following exchange:

> [Defense counsel]: Your Honor, for the record, I needed additional time to talk about a couple of things: lesser included offense, plus the range of punishment for those, also about co-defendant's testimony that must be independent corroborating evidence on those two matters, which I think are gonna be part of this particular case and the importance. I would . . . request the opportunity to go ahead and ask those questions.
>
> THE COURT: Okay. It's denied, but go ahead and go off the record here.
>
> (Off the record)
>
> (Venire[ ]panel excused)
>
> (Proceedings concluded)

The reporter's record does not reflect why the trial court directed the court reporter to go off the record, why the venire panel was excused, or why the proceedings concluded. However, a docket sheet contained in the clerk's record appears to state "Voir dire Panel Busted" next to the date of May 13, 2013, suggesting that there were not enough panel members remaining on the first venire from which to select a jury. A separate voir dire examination was conducted and completed the following day with an entirely new venire.

12

Dotson contends that "[i]n order to adequately review Dotson's case for appeal, . . . counsel needed to examine why, in fact, the original panel busted. If, for example, it was because the State, over objection, successfully challenged several jurors for cause, this could have been reversible error." He further contends that the error in going off the record must be considered harmful because it is "impossible to determine the magnitude of the error" due to the fact that the remainder of the proceedings were taken off the record at the trial court's request.[6] *See* Tex. R. App. P. 44.2.

We disagree. The record reflects that defense counsel made no objection, either at the conclusion of the reported May 13, 2013 proceedings or at any time thereafter, to the dismissal of the first venire panel or to the trial court's direction to go off the record. *See* Tex. R. App. P. 33.1. Moreover, Dotson does not dispute that the second voir dire examination was wholly separate from the first examination, that it was properly conducted and completed, or that the jurors chosen from the second venire were fair and impartial. Therefore, even if the trial court improperly granted challenges for cause or committed any other error during the first examination, such error would not be reversible. *See* Tex. R. App. P. 44.2(a); *see also Gibbs v. State*, 7 S.W.3d 175, 177 (Tex. App.— Houston [1st Dist.] 1999, pet. ref'd) (noting that "a defendant does not have a right to have his entire jury selected from one venire panel"). In other words, as the State maintains, "[i]t may have been the better practice for the trial judge to have the reasons for dismissal

---

[6] Dotson's appellate counsel requested the court reporter to supplement the record to include the reason why the first venire was excused. In a letter addressed to the Clerk of this Court, the reporter explained that her deputy, who took down the proceedings on May 13, 2013, "was asked to go off the record. At no time was she ever asked to go back on the record. Therefore, nothing was omitted from the record, and there is nothing to supplement the record with."

13

of the venire panel explained on the record. This, however, had nothing to do with the impartiality of the jury, selected the next day, that actually decided the case."

For the foregoing reasons, we overrule Dotson's third issue.

### III. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
4th day of June, 2015.

14



# THE THIRTEENTH COURT OF APPEALS

## 13-13-00387-CR

DARYL DOTSON
v.
THE STATE OF TEXAS

On Appeal from the
Criminal District Court 2 of Dallas County of Dallas County, Texas
Trial Cause No. F-1163228-I

## JUDGMENT

THE THIRTEENTH COURT OF APPEALS, having considered this cause on appeal, concludes that the judgment of the trial court should be AFFIRMED. The Court orders the judgment of the trial court AFFIRMED.

We further order this decision certified below for observance.

June 4, 2015